Nos. 112,133
112,134
112,154

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:
A.A.
(D.O.B. 4-21-06)
and
J.S.A.
(D.O.B. 6-19-04).

SYLLABUS BY THE COURT

1.

Kansas district courts have original jurisdiction of all matters that a court might properly address, whether civil or criminal, unless otherwise provided by law. The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is one such limitation on the subject-matter jurisdiction of the Kansas district courts.

2.

The UCCJEA applies to child-in-need-of-care proceedings under the Revised Kansas Code for Care of Children. Accordingly, a Kansas court errs by assuming subject-matter jurisdiction over a child-in-need-of-care case that has interstate connections without making sure that the provisions of the UCCJEA have been satisfied.

3.

Emergency jurisdiction under the UCCJEA is intended to be temporary in nature and, unless a child has been abandoned, requires the existence of an actual emergency requiring immediate court intervention. A finding that a child is in need of care under the Revised Kansas Code for Care of Children is not sufficient, by itself, to support the exercise of emergency jurisdiction under the UCCJEA.

4.

On the facts of this case, in which an initial custody determination had been made in Mississippi, one parent remained in Mississippi, no emergency required immediate action in Kansas, and there is no record that the Mississippi court made the determinations required under the UCCJEA for the Mississippi court to have transferred custody jurisdiction to Kansas, the Kansas district court lacked subject-matter jurisdiction over child-custody matters.

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed August 14, 2015. Reversed and remanded with directions.

*Joseph W. Booth*, of Booth Family Law, of Lenexa, and *Melissa Kelley Schroeder*, of The Kelly Law Firm, of Overland Park, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee State of Kansas; *Lori L. Gilmore*, guardian ad litem, of Overland Park; and *Randy McCalla*, of Olathe, for appellee natural father.

Before HILL, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: The mother of two children appeals the child-custody orders entered by a Kansas district court on the ground that it lacked subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. (That act is frequently referred to in court opinions, including this one, by its somewhat unwieldy acronym, the UCCJEA.) The Kansas court entered orders in a child-in-need-of-care proceeding, but a Mississippi court had previously entered custody orders concerning these children in the divorce case between their parents.

We conclude that the Kansas court lacked subject-matter jurisdiction to enter the orders it did, which included a permanent transfer of custody of the children from mother to father. The Mississippi courts had continuing and exclusive jurisdiction in the case, and the Kansas court orders were neither necessary due to an emergency nor the result of a proper forum transfer under the UCCJEA. Accordingly, we reverse the district court's judgment, direct that the district court vacate its orders, and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

The issues before us require us to determine whether a Kansas court had subject-matter jurisdiction over child-custody matters that were already governed by a Mississippi court's divorce decree. We therefore will need to set out in some detail the proceedings that took place in each state. In addition, all of the parties recognize that a Kansas court *could* have authority to take some action in an emergency, so we must also set out the factual circumstances in sufficient detail that we can assess whether any emergency could have provided authority for the Kansas court's orders.

Mother and Father married in Kansas in June 2002, but they lived throughout the marriage in Mississippi, where they had two children: J.A., a son born in 2004, and A.A., a daughter born in 2006. In January 2007, Mother filed for divorce in Mississippi; she then moved with the children to Kansas.

Mother's divorce petition claimed that Father had treated her cruelly and inhumanely as a ground for the divorce, but the parties eventually stipulated to a divorce based on irreconcilable differences. The case was pending in the Chancery Court of Marshall County, Mississippi, for nearly 4 years before trial; during that time, several hearings were held regarding custody and visitation matters, and a guardian ad litem was appointed to represent the children's interests.

3

The Mississippi court held a 2-day trial in December 2010. The court then entered its "Judgment of Divorce," granting Mother sole legal custody and physical custody of the children, subject only to supervised visitation with Father one weekend a month. The court designated Father's parents to supervise those visits.

The Mississippi court also provided a written opinion to accompany its judgment. The court found that spousal "abuse" had occurred during the marriage, noting that Father admitted he had hit Mother at least once and that there had been "many fights" between the parties. The court said that Mother had hit Father at least once too. Of greater concern was "evidence of sexual abuse" against J.A. The court cited testimony from Dr. Fred Steinberg about "extensive evaluations" he had done, leading Dr. Steinberg to conclude that J.A. had been sexually abused and to recommend that Father have only supervised visitations. Another expert, Dr. Frankie Preston, testified that Father was unlikely to have abused J.A., but the court said that "Dr. Preston failed to read Dr. Steinberg's report in its entirety and that these deficiencies compromise the reliability of Dr. Preston's evaluation." (The court also favorably cited and relied upon Dr. Steinberg's report when it assessed the skills of Father as a parent.) The court said that "the children's behavior appeared to improve" while visitations with Father were initially suspended altogether.

In April 2011, a few months after the divorce action had ended, Mother filed a protection-from-abuse action on behalf of the children in Johnson County District Court. She sought an order preventing Father from contacting the children; in support, she alleged that Father had sexually abused the children in 2008 or 2009. The judge who heard her claim concluded that she had not satisfied her burden of proof and dismissed the petition; the judge also noted that the Mississippi court retained subject-matter jurisdiction over the children under the UCCJEA.

In October 2011, the State of Kansas filed child-in-need-of-care petitions in Johnson County District Court regarding the children. The petitions alleged that the children were in need of care because both parents had reported possible abuse of the children to social-service agencies. The State alleged that it would be against the children's welfare to remain in their homes. The factual allegations included reports that Father had sexually molested the children and that Mother was telling the children inappropriate things about Father and thereby harming them emotionally. The State's petition made several specific allegations: (1) that J.A. was acting out by simulating oral sex on other boys at day care, asking why boys had to put their genitals in their fathers' mouths, and expressing signs of posttraumatic stress disorder; (2) that Mother had reported J.A. as suicidal; (3) that Mother had reported that A.A. had made allegations of sexual abuse against Father; (4) that A.A. had told a social worker that she did not like visiting Father but did not feel uncomfortable doing so; and (5) that Father had reported to police that the children said Mother would no longer let them see Father because he was a liar.

Mother filed a written response, asking that the State's petition be dismissed with respect to her. She made several references in her response to Mississippi court proceedings and orders, noted the evaluations done by Dr. Steinberg and Dr. Preston, and quoted the Mississippi court's statement that Dr. Preston's report had deficiencies that compromised its conclusions. Mother also provided other details about her claims that Father had abused the children.

The same day Mother filed that response, November 14, 2011, the case first came before the Johnson County District Court for a hearing. A pro tem judge (an attorney appointed to act as a judge in place of the assigned judge) presided. That judge determined that the court had subject-matter jurisdiction over the case, but neither the transcript nor the written order tells us what basis, if any, the judge had for that ruling. No

5

mention was made of the UCCJEA. The court set a pretrial conference for January 24, 2012.

When the parties appeared for the pretrial conference, the parents indicated that they planned not to contest the State's allegation that the children were in need of care. The State's attorney noted that there was a Mississippi court action concerning the family and that the Mississippi court remained involved, though the attorney said he hoped the Mississippi case would be resolved soon so that the Kansas case could "start[] clean."

At the next hearing, held February 23, 2012, both Mother and Father entered no-contest statements under which they agreed not to contest the State's factual claim that the children were in need of care, as defined in the Revised Kansas Code for Care of Children. See K.S.A. 2014 Supp. 38-2202(d). A child-in-need-of-care finding allows a court to take continuing acts to protect the children and provide for their welfare. The court accepted the no-contest statements, adjudicated the children in need of care, and set the case over until April to allow a case manager to familiarize himself with the case and make recommendations.

After this, the Kansas district court held a number of hearings. In general, for the next 18 months, the court and the parties postponed final resolution of the case. During this time, the court made some changes in visitation orders and allowed the case manager further time to assess matters and make recommendations—but the children were not removed from Mother's home. We will set out some of the more significant developments.

At a June 4, 2012, hearing, the court ordered that Father have unsupervised visits over Father's Day weekend. Several comments were made at that hearing about the Mississippi and Kansas court proceedings. The State's attorney said this was not "a typical Child [in] Need of Care case," saying that the case "needs to move more into a

more traditional post—typical post-divorce. We have two parents who I think—who I think are capable of each parenting these children appropriately if they will do so." Mother's attorney responded to the case manager's recommendation that Father have unsupervised visitation, arguing that the Mississippi court had spent 4 years on the case and had ordered only supervised visitation for Father while the Kansas court had ordered unsupervised visitation after only a few months of involvement. Father's attorney then denigrated the Mississippi courts and expressed trust in the Kansas judge:

"Judge, I don't care what the courts in Mississippi found. My respect for how those courts work is minimal after learning what I have learned about that system down there. Judge, I trust this court. I trust the professionals in this court, and so I don't really care how long Mississippi has had this case. Sadly it has taken us a much shorter time to figure out what is really going on."

The parties were in court again on June 18, 2012. The State recommended a coparenting plan but asked that the case be postponed until the parents made more progress. The court set the case over. The court also advised Mother that if she wanted to collect child support, she would have to do that in Mississippi.

The court held a review hearing on the family's progress in August 2012. The State complained that Mother had begun using her last name for the children; the court ordered Mother to use Father's last name for them and threatened to take the children from her if she continued behaviors that would alienate them from Father. That month the court also approved a written order increasing Father's contact with the children and continuing his visits unsupervised.

The court next met with the parties in November 2012. It ordered a 90-day home-maintenance plan to be prepared by the case manager and continued the case until February 2013 (though no February hearing was held). The court entered an updated

7

parenting-time plan in January 2013 and in April 2013 ordered the parties to participate in mediation over custody and visitation issues.

At an April 18, 2013, hearing, the court asked the parties if they were going to register the Mississippi court's orders in Kansas. That brought an exchange about jurisdiction between counsel and the court. Mother's counsel said that Mother "would desire to keep the case with the original jurisdiction in Mississippi." Father's counsel responded that Mother's position "may have something to do with the fact things were going her way in Mississippi, Judge." The judge expressed an apparent preference to keep the case in Kansas:

> "All I'm going to say is child support issues can easily be addressed here. . . . History of the case? We have been at this two years. I believe there is equanimity in what a Mississippi judge and what a Kansas judge knows."

Father then filed a petition to register the Mississippi court's divorce judgment in Kansas in August 2013.

The State filed a motion in September 2013—nearly 2 years after it had filed the child-in-need-of-care petition—seeking an emergency review of the children's placement with Mother. The children had been primarily residing with her, but the court had given Father regular, unsupervised visitation, including for almost the entire summer that year.

The State's motion alleged that the children had sent Father videos saying that they didn't want to visit him again. According to the motion, the case manager had reviewed the videos and then had talked with A.A., who had said that Mother had told her that Father had kicked Mother, bit her, and pulled her hair; A.A. also allegedly told the case manager that she liked to see Father, causing the case manager to conclude that Mother's continued negative comments about Father were harming the children.

8

The district court set a hearing for September 12, 2013, and Mother filed a motion to dismiss the motion for lack of subject-matter jurisdiction under the UCCJEA. At the September 12 hearing, the judge noted that she had not yet read Mother's motion but said that such a motion made no sense and that she was going to proceed to hear the State's motion:

"We are here on the State's motion for an emergency review, and I have not had a chance to read it. I also see that mother filed a response to the motion for review hearing and mother's Motion to Dismiss State's Motion for Review Hearing, which doesn't make any sense because we are going to have a review hearing. We are going to have a review hearing. But I haven't had a chance to read it. It is quite long."

The court then asked the attorneys to summarize their positions. The State's attorney explained that the State was seeking a change in custody from Mother to Father. He noted Mother's motion on jurisdiction but said that if Mother was correct, then everything the Kansas court had already done had been illegal. Before hearing from Mother's attorney, the court responded that it had "been at this for two years" and that it considered Mother's motion "without merit." The court heard from each party as to how many witnesses each planned to call and set the case for trial on October 1, 2013.

At trial, Mother again objected to jurisdiction, but the court proceeded to hear the parties' evidence. The case manager, Craig Waddle, recommended that the children's primary residence be changed from Mother's home to Father's because he felt that Mother was creating conflict with Father that was negatively impacting the children. Even so, he testified that he had not seen any situation he would consider an emergency with the children while he had been working with the family:

"Q. Have you seen anything that you felt was an emergency with respect to these children over the past two years?

"A. Urgency?

"Q. Emergency.

"A. Emergency. I believe that the—I think that is hard to answer honestly. I would consider emergency a physical threat, those types of things. I haven't seen any, you know, emergency. My concern is more the ongoing developmental needs of the children."

The court also heard testimony from Mother and Mother's sister. The court gave the parties time to file posttrial briefs and said it would rule after receiving them. The court told the parties that before it ruled it would confer with the Mississippi judge now assigned to the parties' divorce case regarding jurisdictional issues.

The Kansas and Mississippi trial judges spoke by telephone on November 21, 2013, and a transcript was prepared. Central to their discussion was an order the Mississippi court had entered regarding child-support matters in December 2012.

As we previously noted, the Kansas court told Mother in June 2012 that she could pursue collection of Father's past-due child support in Mississippi. She brought a contempt action against Father, which the Mississippi court heard on December 6, 2012. The court held that Father was in contempt for willful failure to pay child support; it found that he owed Mother $10,224 in back child support and $2,876 in medical-expense reimbursements. The court also acknowledged that another $1,083 in medical-expense reimbursements remained in dispute and said these could be submitted to a Kansas court: "This Court finds that this dispute is held in abeyance and will fall under the jurisdiction of the Kansas Court should proper action be taken to raise the issue and should they choose to address it." The Mississippi court's written order, filed December 14, 2012, also said that any other contempt issues that had been previously raised in Mississippi but not addressed in the decision, as well as any other issues that had been pled in the Mississippi court but not yet ruled upon, could now be heard in Kansas "upon the proper pleadings by

10

either party." As far as we can tell, however, the parties had not filed any pleadings before the Mississippi court asking that it change the existing *child-custody* orders.

When the Kansas and Mississippi judges spoke by telephone, they concluded that the Mississippi court had "transferred jurisdiction with regard to the divorce case to Kansas" in the December 2012 order:

> "[THE KANSAS COURT (JUDGE SLOAN):] I took emergency subject-matter jurisdiction under our Child In Need of Care case.
>
> "[MISSISSIPPI] JUDGE WHITWELL: Okay.
>
> "THE [KANSAS] COURT: I believe that in fact then sometime in December of 2012 there is a pleading in your divorce case that talks about finding the father, I believe, in contempt of court with regard to child support and I think some medical arrears, and then there is a—that order—I think I have got it in front of me.
>
> "JUDGE WHITWELL: December 14th, 2012.
>
> "THE [KANSAS] COURT: Paragraph 8 says, 'All other issues of contempt raised herein and in previous pleadings not specifically addressed are hereby transferred to the proper jurisdiction in Kansas where the children now reside. Any issues pled not herein ruled upon may be heard in that jurisdiction upon the proper pleadings by either party.'
>
> . . . .
>
> "THE [KANSAS] COURT: So what you and I—I want to discuss and have a record made so that the attorneys here can see the record of our conversation. I believe now that Mississippi has conceded and transferred jurisdiction with regard to the divorce case to Kansas.
>
> "JUDGE WHITWELL: I agree.
>
> "THE [KANSAS] COURT: Okay. And that was really effective as of December of last year, December 14th[, 2012].
>
> "JUDGE WHITWELL: That is correct."

The district court in Kansas ruled in December 2013 that it had proper subject-matter jurisdiction over child-custody issues involving J.A. and A.A. The court

11

concluded that it had exercised emergency jurisdiction over the case at the outset and that its jurisdiction was confirmed in December 2012 when the Mississippi court transferred full jurisdiction to Kansas. Accordingly, the court denied Mother's motion to dismiss the case for lack of jurisdiction.

In January, the court ordered a change in custody, granting Father sole legal custody and primary residential placement subject to supervised telephone and in-person visitation with Mother. The court found that Mother had shown a "history and pattern of alienation" during the 2 years the case had been pending in Kansas. After Mother filed a motion to reconsider, the court consolidated Mother's parenting time into three 1-week periods in June, July, and August, with another plan to be submitted for approval later. The court's written findings were finalized on June 26, 2014. Mother filed an appeal to this court the following day.

ANALYSIS

Our case turns on whether the district court had subject-matter jurisdiction over the dispute before it, so we begin by explaining what we mean by subject-matter jurisdiction. By jurisdiction, we refer to a court's power or authority to act; here, for subject-matter jurisdiction, we refer to its authority to act on the type of claim (*i.e.*, the subject matter) at issue before it.

In state courts, a trial court will be designated to have broad subject-matter jurisdiction to hear claims. In Kansas, our district courts by statute "have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." K.S.A. 20-301. As a general matter, then, our district courts have the subject-matter jurisdiction to consider disputes that a court might address unless some other statute limits that authority. See *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161

12

(2010); *City of Overland Park v. Niewald*, 20 Kan. App. 2d 909, 910-11, 893 P.2d 848, *aff'd as modified* 258 Kan. 679, 907 P.2d 885 (1995).

The UCCJEA is one source of such statutory limits. All but one state has adopted it (and that state, Massachusetts, has adopted an earlier, similar uniform act, the Uniform Child Custody Jurisdiction Act). Kansas adopted the UCCJEA in 2000, and Mississippi adopted it in 2004. We will cite in our opinion to provisions of the Kansas statutes, but Mississippi has the same provisions.

The UCCJEA seeks to avoid jurisdictional competition between the courts of different states over child-custody matters. It does so through rules that generally make sure that only one state at a time has jurisdiction (authority) over child-custody matters in any particular family.

Central to the UCCJEA's method of keeping order between potentially conflicting state proceedings are two provisions. First, an initial custody determination generally must be made by the child's "home state," which is where the child has lived for at least 6 consecutive months before a court proceeding over custody was filed. See K.S.A. 2014 Supp. 23-37,201(a), (b); K.S.A. 2014 Supp. 23-37,102(8). Second, once an initial custody determination has been made, the state that made it generally retains exclusive jurisdiction over later custody issues until an event listed in the UCCJEA (such as a determination that neither parent nor the child still lives in the state) occurs. See K.S.A. 2014 Supp. 23-37,202(a).

In addition to these listed events, there are two other ways that a second state may properly enter custody orders after initial orders have been entered by the child's home state. The first is the emergency exception, which allows another state's court to exercise temporary authority when a child has been abandoned or there's some other emergency need to immediately protect the child. See K.S.A. 2014 Supp. 23-37,204(a), (c), and (d).

The second is a valid transfer of the case from Mississippi to Kansas, either based on a finding that Mississippi had become an inconvenient forum for the litigation, see K.S.A. 2014 Supp. 23-37,207, or a finding that Mississippi no longer had continuing exclusive jurisdiction. See K.S.A. 2014 Supp. 23-37,203.

In our case, no one disputes that Mississippi was the home state for the children when Mother filed for divorce against Father. Nor is there any dispute that the Mississippi court made an initial custody determination when it granted the parties' divorce or that Father continued to reside in Mississippi. Accordingly, the Kansas court lacked subject-matter jurisdiction unless one of the listed events under K.S.A. 2014 Supp. 23-37,202(a) had occurred, there was an emergency, or the Mississippi court properly transferred the case to Kansas. We will consider each of those possibilities.

Before we do so, however, we want to eliminate two other potential bases—not involving the UCCJEA—for the Kansas court's authority to act.

First, Father and the State contend that we should not reach the jurisdictional issue at all; they base this argument either on waiver (that Mother failed initially to object to the Kansas proceedings on jurisdictional grounds) or equitable principles (that Mother should not be allowed to complain because she has "unclean hands" in the litigation). But a party cannot waive the objection to subject-matter jurisdiction or be prohibited on equitable grounds from raising the issue. *Fox v. Fox*, 50 Kan. App. 2d 62, Syl. ¶ 4, 322 P.3d 400 (2014). Indeed, even if a party could waive the issue, the court has an independent duty to question its subject-matter jurisdiction even when the parties have not done so, *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 456, 284 P.3d 337 (2012), and subject-matter jurisdiction may be challenged at any time. *State v. Williams*, 299 Kan. 509, 532, 324 P.3d 1078 (2014). So we must address the subject-matter-jurisdiction issue on its merits.

14

Second, Father and the State contend that Kansas and Mississippi have concurrent subject-matter jurisdiction here—Mississippi under the UCCJEA and Kansas under the Revised Kansas Code for Care of Children. Father and the State note that the Revised Kansas Code for Care of Children, under which child-in-need-of-care proceedings take place, provides for jurisdiction over proceedings "concerning any child who may be a child in need of care," K.S.A. 2014 Supp. 38-2203(a), and places venue in the county where the child resides. K.S.A. 2014 Supp. 38-2204(a). Based on these provisions, Father and the State say that both states had subject-matter jurisdiction to enter custody orders involving these children, in which case they contend that Mother's initial failure to object to the Kansas proceedings should be construed as a waiver.

But Father and the State ignore a key provision of the Revised Kansas Code for Care of Children—one that makes jurisdiction under it "[s]ubject to" the UCCJEA: "Subject to the uniform child custody jurisdiction and enforcement act, . . . the district court shall have original jurisdiction of proceedings pursuant to this code." K.S.A. 2014 Supp. 38-2203(b).

As we have noted in other cases, the UCCJEA applies to child-in-need-of-care proceedings. See *In re E.T.*, 36 Kan. App. 2d 56, 64, 137 P.3d 1035 (2006), *overruled on other grounds by In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008); *In re Z.E.H.*, No. 109,799, 2013 WL 5975324, at *7-8 (Kan. App. 2013) (unpublished opinion). Accordingly, a Kansas district court errs by assuming subject-matter jurisdiction over a child-in-need-of-care case that has interstate connections without making sure that the provisions of the UCCJEA have been satisfied. *In re Z.E.H.*, 2013 WL 5975324, at *7-9. That mistake was made in this case when a pro tem judge concluded in November 2011 that the Kansas court had proper subject-matter jurisdiction without considering the UCCJEA, even though Mother had filed a response mentioning the Mississippi court proceedings.

15

We will proceed now to consider the three possible ways in which the Kansas court might have had proper jurisdiction under the UCCJEA.

We can quickly eliminate the listed-events exception of K.S.A. 2014 Supp. 23-37,202(a). Father continues to reside in Mississippi, and substantial evidence about the parties remains available there. Neither Father nor the State contends that this exception applies. They instead contend that the Kansas court had proper emergency jurisdiction and that the Mississippi court effectively transferred the case to Kansas with its December 2012 order.

Emergency jurisdiction under the UCCJEA allows courts to enter *temporary* orders to protect a child—but absent child abandonment, the situation must indeed be an *emergency*:

> "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." K.S.A. 2014 Supp. 23-37,204(a).

An emergency is "[a] serious situation or occurrence that happens unexpectedly and demands immediate action." American Heritage Dictionary 583 (5th ed. 2011).

Under the predecessor to the UCCJEA, the Uniform Child Custody Jurisdiction Act, we had explained that its emergency-jurisdiction provision was meant to be "very limited [in] scope and to be reserved for extraordinary circumstances." *In re Marriage of Anderson*, 25 Kan. App. 2d 754, Syl. ¶ 5, 969 P.2d 918 (1998). But the earlier act had broader authority for courts to act under its emergency provisions than the UCCJEA does. It allowed emergency action any time a child was deemed "in need of care" under child-in-need-of-care statutes. See K.S.A. 38-1303(a)(3)(B) (Furse 1993) (stating that a

16

court could exercise jurisdiction if it was "necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse *or is otherwise a child in need of care*" [Emphasis added.]). The UCCJEA omits the "child in need of care" basis for emergency jurisdiction and clearly provides only limited emergency jurisdiction. See K.S.A. 2014 Supp. 23-37,204(a); *In re A.C.*, 130 Cal. App. 4th 854, 863-64, 30 Cal. Rptr. 3d 431 (2005); *Kalman v. Fuste*, 207 Md. App. 389, 406-07, 52 A.3d 1010 (2012); *Parentage of Ruff*, 168 Wash. App. 109, 120, 275 P.3d 1175 (2012).

There was no emergency in this case. As we've noted, a child-in-need-of-care finding by itself does not invoke emergency jurisdiction under the UCCJEA. The State's attorney told the court more than 5 months after the case had been filed that this wasn't a typical child-in-need-of-care case and that it "need[ed] to move into a more . . . typical post-divorce [posture]." At that time, he characterized both parents as "capable of . . . parenting these children appropriately if they will do so." The State's motion seeking to move the children from Mother's home wasn't even filed until nearly 2 years after it had filed the Kansas case, and the district court's order changing placement from Mother to Father didn't come for another 4 months (and 3 months after the court had heard the parties' evidence). Even at trial, the case manager who worked closely with the parties would not characterize the situation as an emergency. This was not an extraordinary and serious situation that demanded *immediate* action.

Even if there *had* been an emergency as defined by the UCCJEA, the district court still would have been limited by that statute in what it could do. The UCCJEA provision provides for *temporary* emergency jurisdiction. See K.S.A. 2014 Supp. 23-37,204(a). As our court noted in *In re Z.E.H.*, this requires "ultimate deferral to the authority of another state if that state had initial child-custody jurisdiction," so the Kansas court must "immediately communicate" with the other court and must "set a specific duration of any temporary orders." 2013 WL 5975324, at *8-9 (citing K.S.A. 2012 Supp. 23-37,204[c]

17

and [d]). The duration of a temporary order has a specific, but limited, purpose—allowing time to bring the matter to the attention of the court that has already entered the initial custody order. Accordingly, the duration should be "adequate to allow the person seeking an [emergency] order to obtain an order from the state having jurisdiction under [the UCCJEA]," not indefinite. See K.S.A. 2014 Supp. 23-37,204(c). The Kansas court did not set a limited duration on its orders and did not contact the Mississippi court until more than 2 years after Mother had filed a response noting the Mississippi court proceedings. Furthermore, a court exercising emergency jurisdiction under the UCCJEA cannot make permanent modifications to another state's custody order. See K.S.A. 2014 Supp. 23-37,313; *Steven v. Nicole*, 308 P.3d 875, 882-83 & n.24 (Ala. 2013); *Beauregard v. White*, 972 A.2d 619, 626-27 (R.I. 2009). In sum, the UCCJEA's emergency-jurisdiction provision could not have provided authority for the broad orders entered by the Kansas court even if there had been a true emergency.

We turn now to the final potential basis for subject-matter jurisdiction in Kansas—a valid transfer of the case from Mississippi to Kansas. Father and the State make two arguments here based on UCCJEA provisions that could apply in this factual situation.

First, the UCCJEA gives a second state the authority to modify the initial state's custody order if (1) the second state is the child's home state when the new action begins and (2) the court of the initial state "determines it no longer has exclusive, continuing jurisdiction." K.S.A. 2014 Supp. 23-37,203(1). Second, the UCCJEA allows a case to be transferred from the initial state to another if the initial state "determines that it [has become] an inconvenient forum" for the dispute and that "a court of another state is a more appropriate forum." K.S.A. 2014 Supp. 23-37,207. Father and the State contend that the Mississippi court made these determinations in its December 2012 order (and confirmed the determinations in the telephone call with the Kansas court).

But though Father and the State contend that the Mississippi court made these determinations, it certainly has not done so explicitly in any document found in our record. In the absence of findings that would authorize the transfer of the case from Mississippi to Kansas under the UCCJEA—and faced with a record that strongly suggests the appropriate determinations were *not* made—we conclude that Kansas lacked subject-matter jurisdiction to enter custody orders.

For the Mississippi court to have determined that it no longer had exclusive, continuing jurisdiction, it would have had to conclude that neither the child nor the child's parents still had "a significant connection with [Mississippi] and that substantial evidence [was] no longer available in [Mississippi] concerning the child's care, protection, training, and personal relationships." See K.S.A. 2014 Supp. 23-37,202(a)(1). Father and the State provide no suggestion about how the Mississippi court could have made that determination. Father continued to reside in Mississippi, the children had been living there full-time only a few years before, and the children continued to visit Father there.

For the Mississippi court to have determined that Mississippi had become an inconvenient forum, the UCCJEA required that it first "allow the parties to submit information" on the issue and that the court consider a list of relevant, nonexclusive factors that should guide its consideration. See K.S.A. 2014 Supp. 23-37,207(b). Those factors include the nature and location of evidence available in each state, the familiarity of each state's court with the facts of the case, and the relative financial circumstances of the parties. We have no indication that the Mississippi court ever advised the parties that it was considering whether it had become an inconvenient forum or that it allowed the parties to submit information on the question.

The Mississippi court's December 2012 order is ambiguous on our record. The only reference to Kansas came in its final paragraph:

19

> "All other issues of contempt raised herein and in previous pleadings not specifically addressed are hereby transferred to the proper jurisdiction in Kansas where the children no[w] reside. Any issues plead not herein ruled upon may be heard in that jurisdiction upon the proper pleadings by either party."

On its face, the first sentence of that paragraph appears to transfer jurisdiction *only* over contempt matters: "*All other issues of contempt . . .* are hereby transferred to the proper jurisdiction in Kansas . . . ." (Emphasis added.) While the second sentence broadly refers to "[a]ny issues plead [in Mississippi but] not herein ruled upon," saying that these issues also may be heard in Kansas, we have no indication that any issues were before the Mississippi court *other* than contempt proceedings over financial obligations. Neither the State nor Father has cited any document that would have placed a custody issue for pending action before the Mississippi court in 2012.

We recognize that appellate courts ordinarily presume that a trial court has made the necessary findings to support its judgment. Here, though, the record is inconsistent with that presumption, and we therefore refuse to make it. In similar cases, Kansas appellate courts have refused to make the presumption and have remanded for proper factual findings. See *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013); *Burch v. Dodge*, 4 Kan. App. 2d 503, 507, 608 P.2d 1032 (1980); *City of Hutchinson v. Wegele*, No. 103,984, 2011 WL 4031511, at *2 (Kan. App. 2011) (unpublished opinion).

The record here is inconsistent with a presumption that either state's court made the necessary findings to support a transfer of jurisdiction under the UCCJEA. There is no indication that the Mississippi court had any matter related to child-custody before it when it said in December 2012 that issues pled before it but not ruled upon should thereafter be heard in Kansas. Nor do we have any indication that the Mississippi court ever made any determination required under the UCCJEA to transfer child-custody jurisdiction to Kansas. Nor do Father or the State cite any point at which the Mississippi

20

court allowed the parties to be heard, as required by the UCCJEA, on whether Mississippi had become an inconvenient forum.

Father and the State contend that any failure to make proper findings took place in Mississippi, not Kansas, and that we should not be concerned with it. But the UCCJEA is premised upon the coordination of courts in the two states. Here, the Kansas court could not assume jurisdiction until it first had a sufficient basis to conclude that the Mississippi court had made one of the two determinations required to transfer jurisdiction to Kansas—either that Mississippi had become an inconvenient forum or that neither the children nor the parents still had a significant connection with Mississippi and that substantial evidence was no longer available in Mississippi about their care. The Kansas court never had a sufficient basis to make that conclusion.

We recognize, of course, that in a telephone conversation, a Mississippi judge (though not the one who had actually made the December 2012 order) told the Kansas judge assigned to this case that he agreed that Mississippi had "conceded and transferred jurisdiction" to Kansas. But he agreed that this had been done with the December 2012 order, and that order simply doesn't show that any of the required determinations were made.

Because we have concluded that the Kansas court did not have subject-matter jurisdiction, its orders were void as a matter of law and must be vacated. See *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997); *In re Adoption of I.H.H.-L.*, 45 Kan. App. 2d 684, Syl. ¶ 6, 251 P.3d 651, *rev. denied* 292 Kan. 964 (2011). But that doesn't necessarily end our case. Were we to order that the Kansas custody orders be vacated and the Kansas action immediately dismissed, the Mississippi custody order would immediately take effect, and the lives of two children could be disrupted without appropriate transition or court action.

21

The Kansas court, like any other court, has the ability to consider whether it has jurisdiction over the parties and over the subject matter of the litigation. See *Gamblian v. City of Parsons*, 261 Kan. 541, 545-46, 931 P.2d 1238 (1997); *Justus v. Justus*, 208 Kan. 879, 881, 495 P.2d 98 (1972). As the United States Supreme Court once said: "Every court of general jurisdiction has the power to determine whether the conditions essential to its exercise exist." *Texas & Pac. Ry. v. Gulf, Etc., Ry.*, 270 U.S. 266, 274, 46 S. Ct. 263, 70 L. Ed. 578 (1926).

In our case, whether the Kansas district court has subject-matter jurisdiction continues to remain at issue. Although our record strongly suggests that the Mississippi court never made the determinations required to transfer jurisdiction to the Kansas court, it may have intended to make such findings. In a Kansas case, we would remand the matter so that the district court could make the appropriate findings. See *Weber*, 297 Kan. at 816; *Burch*, 4 Kan. App. 2d at 507; *Wegele*, 2011 WL 4031511, at *2. Given the collaborative approach required of the courts in both states under the UCCJEA, a similar remedy is appropriate here.

In addition, we cannot say whether any true emergency now exists; our factual record ends at the time of the parties' trial in the Kansas district court.

Based on these considerations and our conclusion that the Kansas court did not have subject-matter jurisdiction when it entered its judgment, we reverse its judgment, order that it vacate the existing custody and visitation orders it had entered, and remand for further proceedings consistent with this opinion. We have not vacated the orders through this opinion because we want to allow the district court and the parties to confer before some action is taken, recognizing that any action will have real consequences for the children and their parents. On remand, the Kansas district court may exercise jurisdiction over the case only if authorized under the UCCJEA. In making the determination of its jurisdiction, the Kansas court may communicate with the Mississippi

22

court regarding any findings the Mississippi court may have already made or may need to make if the Mississippi court seeks to transfer jurisdiction to Kansas.

We have published this opinion because we believe it will be instructive. Both the judges and the attorneys who handle these cases often have heavy caseloads. Quite reasonably, the cases are reviewed mostly at court hearings, and once a ruling is made on one issue (*e.g.*, that the court has jurisdiction or that the child is in need of care), the parties move on to the next one. In both *In re Z.E.H.* and here, an early ruling was made that the court had subject-matter jurisdiction without regard to the UCCJEA's provisions. Both *In re Z.E.H.* and this case suggest that special care must be paid to these UCCJEA jurisdictional issues; otherwise, a case may move on for an extended time period even though the court lacks subject-matter jurisdiction. That is exactly what the UCCJEA's provisions try to prevent.

We therefore reverse the district court's judgment, direct the district court to vacate its existing custody and visitation orders, and remand the consolidated cases for further proceedings consistent with the UCCJEA and this opinion.