NOT DESIGNATED FOR PUBLICATION

No. 115,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of P.J.B.,
A Minor Child Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed March 10, 2017. Reversed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural father.

*Sean M.A. Hatfield*, of Maughan Law Group LC, of Wichita, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: This is a private child in need of care case from Sedgwick County. The court decided that P.J.B., born in 2006, was indeed a child in need of care and placed the child with D.B.—P.J.B.'s half-sister—who is the petitioner in this case. After the court tried several case plans and held review hearings, P.J.B.'s father refused to cooperate. D.B. moved to sever Father's parental rights. After taking evidence on the motion, the court terminated Father's parental rights.

Our careful review of the record makes it clear that the district court failed to timely comply with the Uniform Child-Custody Jurisdiction and Enforcement Act, K.S.A. 2015 Supp. 23-37,101 *et seq.*, specifically K.S.A. 2015 Supp. 23-37,204. Accordingly, the court lacked jurisdiction to terminate Father's rights by exercising temporary emergency jurisdiction for nearly 2 years without making any attempt to

1

contact the court in Texas where a child custody order had been entered in 2012. The district court's posttermination efforts to obtain a deferral of jurisdiction by the Texas court cannot reinvest the court with jurisdiction after the fact. Although we regret the uncertainty this places on P.J.B.'s status, lack of subject matter jurisdiction cannot be waived or ignored.

*We offer a brief family history.*

It appears from the record that Father and Mother lived a nomadic life during P.J.B.'s early years, traveling to different places for Father's jobs. Prior to P.J.B. reaching school age, the family lived in Pennsylvania, California, and Georgia. Father testified that P.J.B. attended Pre-Kindergarten and Kindergarten in Georgia. They then moved to Pennsylvania. Mother subsequently left Father and took P.J.B. to Texas, where P.J.B. started first grade. Father ultimately found Mother and P.J.B. and filed a paternity action in Tarrant County, Texas, where the court determined that he was P.J.B.'s father. Father testified that he was designated by the Texas court as P.J.B.'s primary residential parent, which was implicitly confirmed by Mother's weekend visitations.

After the parentage and custody decision, Father and P.J.B. left Texas in May 2012 and moved to Kansas where Father's reported permanent address was on a farm in Cheney. He also owned a rental home in Derby, Kansas. While in Kansas, Father and P.J.B. lived in one or more motels in the Wichita area. While in Wichita, P.J.B. nearly completed first grade at an elementary school in Derby. Father then accepted a temporary job in the St. Louis area, and the family moved to Hazelwood, Missouri, in April 2013. P.J.B. attended an elementary school in Hazelwood and finished the first grade.

In August 2013, Father and P.J.B. returned to Kansas. Again, they lived in a motel, but P.J.B. returned to the Derby elementary school, starting classes late. Father and P.J.B. lived in motels because he did not want to evict the renters in the Derby house

because he would likely need to move for future employment. Mother also lived in Wichita at this time and exercised her visitation with P.J.B. on weekends.

*A child in need of care petition is filed.*

On November 15, 2013, D.B., P.J.B.'s half-sister, filed a private child in need of care petition alleging that P.J.B. was in need of care. D.B. alleged that P.J.B. reported being frequently hungry because Father did not feed her; P.J.B. also reported that she was missing a lot of school while accompanying Father on various errands. D.B. also alleged that P.J.B. had gone dumpster-diving with Mother and was left in an unheated vehicle for several hours at a time waiting for Father. Upon review of the petition, the district court issued an ex parte order of protective custody, authorized the Department of Children and Families to take custody of P.J.B., and permitted DCF to place the child in D.B.'s custody.

Several days later, the court held a temporary custody hearing. At this hearing, Father's counsel asserted that jurisdiction over P.J.B.'s custody rested solely with Texas. The court rejected the argument, finding Kansas as the home state and that an emergency existed; the court set the case for hearing and adjudication approximately 3 weeks later. The court issued orders for family members to follow as part of the child in need of care proceeding. Ultimately, both Mother and the guardian ad litem stipulated that P.J.B. was a child in need of care; Father requested an evidentiary hearing.

The two witnesses who testified at Father's hearing were D.B. and Father. D.B. discussed the nomadic life Father, Mother, and P.J.B. lived while Father was working different jobs as an engineer. When Father and P.J.B. returned to Kansas in the summer of 2012, D.B. testified she talked to Father about P.J.B.'s schooling status, and Father expressed that P.J.B.'s schooling was not a big concern because he could always home school her. During the summer, P.J.B. was in KinderCare and occasionally traveled with

3

Father. After Father and P.J.B. returned from the St. Louis area in May 2012, D.B. noticed P.J.B. had bruises that Mother could not explain. D.B. had been visiting P.J.B. regularly on Sundays during Mother's visitation time. D.B. also testified about the physical abuse she suffered from Father when she was a child and teenager.

D.B. was concerned about P.J.B.'s safety for other reasons. When P.B.J. was with Mother, the child reported dumpster-diving for used electronics. Father was unconcerned about Mother's actions with P.J.B. during such visitations. D.B. also was concerned about P.J.B.'s school attendance. D.B. noted that P.J.B.'s clothes often did not fit or had holes in them. D.B. had told Father that P.J.B. could stay with her while he traveled, but Father responded he did not believe that moving the child around frequently was a problem. Finally, D.B. was concerned about Father's mental health, finding his behavior was erratic and volatile.

Father testified his address was in Cheney, Kansas, and that he received mail at a post office box in Derby. At the time of the hearing, he was staying at a motel in Wichita. Father worked as a contract engineer since 1977 and did mostly aerospace work. He had graduated from high school and had obtained 109 hours of academic credit at Wichita State University. Father started in aeronautical engineering, but after 2 years, he switched majors to business administration. He denied ever physically abusing P.J.B., but ultimately admitted that P.J.B. suffered the normal scrapes and bruises from childhood activities. He testified that he never did anything to her to cause any bruising.

When asked if he did not believe in doctors, Father testified the family went to an osteopathic physician when D.B. was a child and further stated that he had some bad experiences with doctors. However, Father testified he would never refuse to take his child to a doctor if it was clear she needed to see a physician. Father testified that he took P.J.B. to a physician and dentist at the beginning of every school year. Father denied P.J.B. missed much school, although she was tardy sometimes as he was driving her to

4

and from Derby; he also admitted there were occasions when he was late in picking P.J.B. up at the end of the school day. As for her meals, Father testified there was always milk, cereal, and snacks in the hotel room, and they went out to restaurants and buffets for meals. Father also had a crockpot in the hotel room to make meals.

Father believed he could take care of P.J.B. if she was placed back in his custody. Although he was unemployed at the time of the adjudication hearing, he had access to his IRA and was receiving unemployment compensation. He testified that he could also sell his real estate properties. Father testified he was looking for a job anywhere in the continental United States but also admitted that he could not move until a decision was made about P.J.B. by the judge or the state agency.

At the conclusion of the adjudication hearing, the court found that P.J.B. was a child in need of care by clear and convincing evidence. The court was concerned about the treatment D.B. received by Father, as well as Father's mental state, based upon the nature of his rambling testimony. The court questioned whether Father was able to respond to the needs of a child; his answers often were not responsive to the questions, and so he was either evasive or unable to address matters he did not believe were important to him. The court found Father did not have his "own act together" and, thus, was not appropriately equipped to care for P.J.B. The court ordered Father to get a psychological evaluation and set the matter for a disposition hearing.

At the end of February 2014, the court made its disposition of the case. St. Francis Community Services was ordered to advise each parent of the resources necessary to complete the court orders in efforts to reintegrate P.J.B. with the family. The court found that Father's visitation since P.J.B.'s removal from his care had been irregular, he had not yet completed the court-ordered psychological evaluation, and he had not found a stable residence.

5

In January 2015, D.B. filed a motion to terminate Father's parental rights. During a permanency hearing that same day, the court heard additional testimony about its jurisdiction in the case. Although Father personally told the court more than once that he "doesn't question" the court's jurisdiction, he did question D.B.'s motive for waiting until he was in Kansas. During the hearing, Father made available a copy of an order from Tarrant County, Texas, dated August 20, 2012. At the conclusion of the hearing, Father proffered the Texas order, and the court directed that copies be made and distributed to all parties. This order is not contained in the record on appeal.

Based on this testimony at the permanency hearing, the court noted that regardless of which state was P.J.B.'s home state, it had jurisdiction to protect the child from abuse or neglect. While the court took judicial notice of the Texas paternity case, the court found the information was inconclusive about whether Texas was P.J.B.'s home state. As a result, the court refused to set aside its prior order finding the Kansas court had jurisdiction in the case. Despite taking notice of the Texas case, the court never made findings as required under K.S.A. 2015 Supp. 23-37,203 that Texas was no longer the home state. Also, the record does not reflect that the Kansas court tried to communicate with the Texas court. Nor did it determine the duration of the temporary emergency jurisdiction as required by K.S.A. 2015 Supp. 23-37,204(d).

*The court takes up the question of severance of parental rights.*

A hearing on D.B.'s motion to terminate Father's rights was held in July 2015. Father, several social workers, and others testified. The court found that P.J.B. came into the court's custody because of Father's erratic behavior and concerns over her health and well-being. The court found that Father's aberrant behavior and testimony in the courtroom established that he was unable to provide a stable environment for P.J.B. The court noted that Father had a recent series of arrests and accidents, and he failed to follow up on a psychologist's recommendations. The court concluded that Father was unfit, that

6

his status was unlikely to change, and it was in P.J.B.'s interest to terminate Father's rights. Father timely appealed.

Four months *after* the court terminated Father's rights (and 2 years after the ex parte removal of P.J.B. from Father's care), the district court issued a formal "Communication of Emergency" to the court in Tarrant County, Texas. The district court informed the Texas court that it was exercising emergency jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act. In March 2016, the Tarrant County family judge sent a letter to the Kansas court noting that the judges had held a telephone conference on March 14, 2016. After reviewing the statutes, the documentation from the Kansas court, and the Texas court records, the Texas court held that it had been the court of exclusive continuing jurisdiction and the Kansas court had exercised temporary emergency jurisdiction. Due to the parties' longevity in Kansas and the location of the witnesses, Texas was no longer a convenient forum, and the Texas court declined to retain exclusive jurisdiction. The Texas court deferred jurisdiction to Kansas. The Kansas court continued the child in need of care proceedings in an effort to reintegrate P.J.B. with Mother.

*Under the Act, jurisdiction of the Kansas court is questionable.*

The primary question raised in Father's brief is whether the district court lacked jurisdiction to enter the order terminating his parental rights. Whether jurisdiction exists is a question of law over which the appellate court has unlimited jurisdiction. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

Father initially raised jurisdiction at the temporary custody hearing asserting that Texas had exclusive jurisdiction as a result of a custody order in a paternity case filed there. As a general rule, district courts in Kansas have general jurisdiction over all matters, civil or criminal. That power, however, can be limited by other statutes. K.S.A.

7

20-301. One of those limiting statutes is the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 2015 Supp. 23-37,101 *et seq.* D.B. acknowledges in her brief that the Act applies in this case.

The question of subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015), *rev. denied* 303 Kan. 1078 (2016). Moreover, parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. *In re A.A.*, 51 Kan. App. 2d 794, 805, 354 P.3d 1205 (2015). See *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 225, 365 P.3d 435 (2015).

D.B. argues that:
- Father failed to prove that Texas properly followed the requirements of the Act in its initial child custody order; and
- Kansas is P.J.B.'s home state.

Because D.B.'s first argument fails, we decline to address the remaining arguments raised on appeal.

First and foremost, D.B. never challenged the nature of Texas' original order below. Father raised the jurisdiction immediately after the court removed P.J.B. from his care. Father testified that P.J.B. had lived in Georgia, Pennsylvania, and California; there was no mention of her living in Kansas until May 2012. Prior to their move to Kansas, Father testified that Mother took P.J.B. from Pennsylvania or Georgia to Mother's home in Texas; P.J.B. started first grade in Texas. Father followed them to Texas and filed a paternity and custody action. Father testified his paternity was determined in the Texas proceeding and that he was ultimately named primary residential parent. An order dated

8

October 20, 2012, from the Tarrant County, Texas court was provided at one of the hearings and shared with all the parties. The Kansas court, although belatedly, found the Texas orders facially valid as it finally made contact and conferred with the Tarrant County, Texas court *after* it had already terminated Father's parental rights. This is putting the cart before the horse.

The petitioner, seeking to invoke jurisdiction in a child-custody proceeding, which includes a child in need of care case, has the burden of establishing the court's jurisdiction. See *In re Baby Boy M.*, 141 Cal. App. 4th 588, 599, 46 Cal. Rptr. 3d 196 (2006) (The court agreed with petitioner's implicit argument that the state agency, which initiated the dependency proceedings, bore the burden of establishing the court's jurisdiction.); *S.C. Dep't of Soc. Servs. v. Tran*, 418 S.C. 308, 318, 792 S.E.2d 254 (S.C. App. 2016) (DSS had the burden of proving subject matter jurisdiction, and it did not meet that burden). See also *Sleeth v. Sedan City Hosp.*, No. 105,876, 2012 WL 402018, at *1, (Kan. App. 2012) (unpublished opinion), (the party invoking the court's subject matter jurisdiction bears the burden to prove that jurisdiction exists) *rev'd on other grounds*, 298 Kan. 853, 317 P.3d 782 (2014).

There is no dispute that a child in need of care proceeding is subject to the Act. Because of this clear statutory limit, a district court "errs by assuming subject-matter jurisdiction over a child-in-need-of-care case that has interstate connections without making sure that the provisions of the UCCJEA have been satisfied." *In re A.A.*, 51 Kan. App. 2d at 806.

Here, because the court was advised of a potential Texas order at the first hearing after P.J.B.'s removal from Father's care, it had the obligation to clarify whether it possessed subject matter jurisdiction in light of the Texas proceeding. The district court, however, misunderstood the basis for jurisdiction in the case. While there was some evidence that Kansas would satisfy the 6-month basis to qualify as a "home state," the

court was required to determine whether Texas had, in fact, issued a custody order and had ongoing, exclusive jurisdiction. The district court erred by failing to take any steps to determine the status of the Texas proceeding. See *In re A.A.*, 51 Kan. App. 2d at 806.

The family lived in Kansas between May 2012 and February 2013, then left. They moved back to Kansas in August 2013, and the child in need of care petition was filed in November 2013. While this means the family may well have been in Kansas for 6 months as required by K.S.A. 2015 Supp. 23-37,102(8), the definition of "home state" under the Act, it does not change the fact that if Texas issued a child custody order, it retained exclusive, continuing jurisdiction over custody determinations until it decided otherwise. K.S.A. 2015 Supp. 23-37,201(a)(2), (a)(3).

At most, the district court at that time had authority to exercise temporary emergency jurisdiction under K.S.A. 2015 Supp. 23-37,204, assuming the facts in the petition met the heightened level of "emergency" required for removal of a child under the Act. *In re A.A.*, 51 Kan. App. 2d at 806-07. We emphasize the term "temporary." *In re A.A.* held that an emergency under the Act is a serious situation or occurrence that happens unexpectedly and demands immediate action. *In re A.A.*, 51 Kan. App. 2d at 806-07.

The district court erred in concluding that temporary emergency jurisdiction existed as long as the child in need of care proceeding was pending. When invoking emergency jurisdiction where there is a previous child-custody determination from another state, any order by a Kansas court "must specify . . . *a period that the court considers adequate to allow the person seeking an order to obtain an order from the [originating] state*." (Emphasis added.) K.S.A. 2015 Supp. 23-37,204(c). Moreover, the Kansas court was required to "immediately communicate" with the originating state and "to resolve the emergency, protect the safety of the parties and the child, and *determine a period for the duration of the temporary order*." (Emphasis added). K.S.A. 2015 Supp.

10

23-37,204(d). The district court failed to comply with these provisions which were intended to ensure that emergency jurisdiction is only temporary. *In re N.U.*, 52 Kan. App. 2d 561, 568-69, 369 P.3d 984 (2016).

It is apparent from the record that neither the district court nor D.B., as petitioner, complied with the requirement to "immediately communicate" with the Texas courts to confirm the nature of the Texas order or to attempt to obtain a deferral of Texas jurisdiction in this case. The original order failed to specify any period for D.B. to clarify Texas' jurisdiction or obtain a deferral. Likewise, there is no provision in the Act to permit a court to exercise emergency jurisdiction for an unlimited amount of time; instead, the time period must be set based on the amount of time the court considers adequate to allow D.B. to obtain an order from Texas. Here, the court provided no time limit, and it is clear that neither the court nor D.B. "immediately communicated" with the Texas court to address the jurisdiction issue.

In fact, it was over 21 months *after* P.J.B. was removed from Father's custody and several months *after* the district court terminated Father's parental rights before any effort was made by the Kansas court to contact the Texas court. The reason for this contact appears to have been solely due to Mother's wish to return to Texas with P.J.B. while the Agency was continuing reintegration efforts with her.

D.B. cites no authority that permits a posttermination deferral by the home state to Kansas to apply retroactively to provide subject matter jurisdiction for the prior ruling—the termination of Father's rights. Indeed, this court has recently held that if a petitioner or the State fail to obtain a waiver or other order from the originating child custody state within the period permitted by the temporary order, the district court loses jurisdiction to continue to enforce the temporary order. See *In re N.U.*, 52 Kan. App. 2d at 565-66. Additionally, in that case, the Kansas district court's subsequent efforts that resulted in an order from the originating state (Nebraska)—which declined to assert jurisdiction—did

not render the parent's appeal moot. 52 Kan. App. 2d at 565-66. Our court found that once the time limit in the original temporary order expired, subject matter jurisdiction ended in Kansas. 52 Kan. App. 2d at 566.

*We must reverse.*

For these reasons, the district court clearly lacked subject matter jurisdiction when it terminated Father's rights on July 23, 2015—more than 21 months after the child in need of care petition was filed—and P.J.B. was removed from Father's care. Because the district court lacked subject matter jurisdiction, its orders terminating Father's parental rights are void, and the district court lacks further jurisdiction in this case.

If another child in need of care petition is filed, we decline to determine at this time whether the facts have established an emergency under the Act or whether there was sufficient evidence to support the child in need of care adjudication and the propriety of terminating Father's rights. Further, we note the belated relinquishment of jurisdiction by the Texas court may be relevant in that proceeding, while it cannot restore jurisdiction in this case.

Reversed.