NOT DESIGNATED FOR PUBLICATION

No. 119,836

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.K.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed April 19, 2019.
Affirmed.

*Miranda B. Johnson*, of Caffey, Johnson & Ingels P.A., of Manhattan, for appellant natural
mother.

*Bethany C. Fields*, deputy county attorney, and *Barry R. Wilkerson*, county attorney, for appellee.

*Blake A. Robinson*, guardian ad litem.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

PER CURIAM: A.K. (Mother), the natural mother of J.K., appeals from the district
court's adjudication of J.K. as a child in need of care (CINC). Mother argues that the
district court lacked jurisdiction under the Uniform Child Custody Jurisdiction and
Enforcement Act (UCCJEA), K.S.A. 2018 Supp. 23-37,101 et seq. Finding no reversible
error, we affirm the district court's exercise of jurisdiction, although under a different
rationale than that of the district court.

1

FACTS AND PROCEDURAL HISTORY

J.K. is the minor child of Mother and J.P.K. (Father). On July 22, 2009, Mother and Father were divorced in Burnet County, Texas. As part of the divorce decree, the Texas court made custody and visitation orders for J.K. Sometime thereafter, Mother, Father, and J.K. moved from Texas. At all times relevant to this appeal, Mother and J.K. resided in Manhattan, Kansas, and Father resided in Arizona.

On March 2, 2017, the State of Kansas filed a petition in the Riley County District Court that sought to have J.K. declared a child in need of care based on reports alleging that J.K. had run away from home, had not been attending school, had battered Mother, and had used alcohol. Following a temporary custody hearing, the State withdrew its motion for temporary custody and the district court returned J.K. to Mother's custody. The court also ordered an evaluation of Father and later allowed Mother to take J.K. to visit Father in Arizona. On April 7, 2017, the district court entered an agreed order for informal supervision that ordered J.K. to live with Father in Arizona.

On May 12, 2017, Mother moved for a change of custody alleging that it was no longer in J.K.'s best interests to reside with Father in Arizona. In the motion, Mother questioned whether Kansas had jurisdiction over J.K. given that the divorce and custody arrangements had been made in Texas. For his part, Father requested termination of the informal supervision and transfer of J.K. back to Kansas. On June 29, 2017, the district court dismissed the CINC case on grounds that Kansas lacked jurisdiction under the UCCJEA.

On October 31, 2017, the State filed a second petition in the Riley County District Court, again seeking to have J.K. declared a child in need of care. The petition alleged that J.K. had returned to Kansas and continued to run away from Mother's home and that Mother had refused to allow J.K. back into the home. At a temporary custody hearing, the

2

district court exercised emergency temporary jurisdiction and placed J.K. in the custody of the Department for Children and Families (DCF).

At a pretrial hearing on November 16, 2017, Mother and Father denied the allegations in the State's petition. The district court advised that it would contact the court in Burnet County, Texas, to address the jurisdictional issue under the UCCJEA. At a later pretrial hearing, the court informed the parties that Judge Linda Bayless, the Burnet County judge assigned to the parties' domestic case, had refused to relinquish jurisdiction. As a result, the district court transferred the case to Burnet County for further proceedings. The court ordered J.K. to remain in DCF custody, maintaining emergency jurisdiction until such time that Texas assumed jurisdiction over the case. Following the hearing, the district court forwarded the case file to Burnet County.

On January 22, 2018, the district court issued an agreed order to terminate its emergency jurisdiction and close the case. The court noted that the Texas court had failed to assume jurisdiction over J.K. since the case was transferred. The district court relied on DCF's recommendation that J.K. be returned to Mother's custody to find that an emergency no longer existed to necessitate out-of-home placement.

On May 25, 2018, the State filed a third petition in the Riley County District Court, once again requesting that the court declare J.K. a child in need of care. The petition stated that Mother had not seen J.K. since May 13, 2018, and that Mother had changed the locks to prevent J.K. from returning home. The petition also stated that law enforcement had investigated a report that J.K. was an alleged victim of child sexual exploitation and other abuse. At a temporary custody hearing, the district court placed J.K. in DCF custody after finding that it had jurisdiction under the UCCJEA because "the Court in Texas has relinquished jurisdiction." At a pretrial hearing, the district court allowed J.K. to visit Father in Arizona and set the case for adjudication and disposition on July 26, 2018.

Prior to the start of the adjudication and disposition hearing, the parties joined the district court in chambers for an on-the-record conference call with Judge Bayless from Burnet County, Texas. The district court outlined the procedural history of the case, including the jurisdictional issue under the UCCJEA. The court stated that Judge Bayless had initially indicated that Texas was going to retain jurisdiction over the case but then later declined jurisdiction. The court noted that J.K. and Mother lived in Kansas, that Father lived in Arizona, and that the only tie to Texas was the original divorce decree. The court then asked Judge Bayless to verify if she still wanted to decline jurisdiction and let the Kansas court handle the case. Judge Bayless responded that she would "absolutely let [Kansas] handle it." Mother then spoke to Judge Bayless about her concerns and requested that the case be dismissed because she did not feel that J.K. was in need of care. Judge Bayless told Mother that her concerns would "[have] to be taken care of in Manhattan, Kansas."

The case proceeded to adjudication, where Mother moved to dismiss the case for lack of jurisdiction. Mother argued that when the State filed the May 25, 2018 CINC petition, the court made no record showing that Texas had relinquished jurisdiction nor any finding that Kansas needed to retain emergency jurisdiction. The district court denied the motion on grounds that Texas had relinquished jurisdiction to Kansas. Specifically, the judge stated,

> "I believe the original waiver by Judge Bayless back in January of [2018] is sufficient for this case, but based upon the mother's request here this afternoon we were able to . . . get Judge Bayless on the phone, which we made a record of, and she once again indicated Texas did not wish to maintain jurisdiction."

After hearing witness testimony and argument from counsel, the district court adjudicated J.K. to be a child in need of care and ordered her to reside in Arizona with Father. Mother timely appeals.

4

Mother argues that the district court did not properly acquire jurisdiction under the UCCJEA to proceed with the CINC case. Whether jurisdiction exists is a question of law over which an appellate court has unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). This issue involves interpretation of the UCCJEA, which also requires us to exercise unlimited review. *McNabb v. McNabb*, 31 Kan. App. 2d 398, 403, 65 P.3d 1068 (2003).

The Revised Kansas Code for Care of Children (Code), K.S.A. 2018 Supp. 38-2201 et seq., provides that Kansas courts have original jurisdiction over proceedings under the Code, but this jurisdiction is subject to the UCCJEA. K.S.A. 2018 Supp. 38-2203(b). The UCCJEA aims "to avoid jurisdictional competition between the courts of different states over child-custody matters. It does so through rules that generally make sure that only one state at a time has jurisdiction (authority) over child-custody matters in any particular family." *In re A.A.*, 51 Kan. App. 2d 794, 804, 354 P.3d 1205 (2015). "[A] Kansas district court errs by assuming subject-matter jurisdiction over a child-in-need-of-care case that has interstate connections without making sure that the provisions of the UCCJEA have been satisfied." 51 Kan. App. 2d at 806. Texas has also adopted the UCCJEA. See Tex. Fam. Code Ann. §§ 152.001-.317.

This court has explained the general jurisdictional rules on interstate communication and transfer of jurisdiction under the UCCJEA:

"Central to the UCCJEA's method of keeping order between potentially conflicting state proceedings are two provisions. First, an initial custody determination generally must be made by the child's 'home state,' which is where the child has lived for at least 6 consecutive months before a court proceeding over custody was filed. See K.S.A. 2014 Supp. 23-37,201(a), (b); K.S.A. 2014 Supp. 23-37,102(8). Second, once an initial custody determination has been made, the state that made it generally retains

exclusive jurisdiction over later custody issues until an event listed in the UCCJEA (such as a determination that neither parent nor the child still lives in the state) occurs. See K.S.A. 2014 Supp. 23-37,202(a).

"In addition to these listed events, there are two other ways that a second state may properly enter custody orders after initial orders have been entered by the child's home state. The first is the emergency exception, which allows another state's court to exercise temporary authority when a child has been abandoned or there's some other emergency need to immediately protect the child. See K.S.A. 2014 Supp. 23-37,204(a), (c), and (d). The second is a valid transfer of the case from [the home state] to Kansas, either based on a finding that [the home state] had become an inconvenient forum for the litigation, see K.S.A. 2014 Supp. 23-37,207, or a finding that [the home state] no longer had continuing exclusive jurisdiction. See K.S.A. 2014 Supp. 23-37,203." *In re A.A.*, 51 Kan. App. 2d at 804.

Because Texas issued J.K.'s initial custody order, it was the home state and thus retained exclusive, continuing jurisdiction over custody determinations unless an event listed above occurred. To that end, Mother argues that the Kansas court could only exercise jurisdiction in one of two ways: under the emergency exception or pursuant to a valid transfer of the case from Texas. Mother claims that neither of these options existed here because the district court did not rely on the emergency exception set forth in K.S.A. 2018 Supp. 23-37,204 and because the Texas court did not follow the proper procedure to transfer the case to Kansas under K.S.A. 2018 Supp. 23-37,207 or K.S.A. 2018 Supp. 23-37,203.

But Mother's argument ignores K.S.A. 2018 Supp. 23-37,202(a)(2), which provides that a court retains exclusive, continuing jurisdiction over child custody determinations until "a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." The Kansas district court found that neither J.K. nor her parents still lived in Texas. Mother does not challenge this finding or otherwise allege that J.K. did not reside in Kansas during the six months before the State filed its May 25, 2018 CINC petition.

6

Thus, Kansas was J.K.'s home state when the State filed the petition. See K.S.A. 2018 Supp. 23-37,102(8) (defining the term "'[h]ome state'"). As a result, the exercise of jurisdiction by the Kansas district court was proper. See K.S.A. 2018 Supp. 23-37,203(2) (allowing court of this state to modify child custody determination made by court of another state if this state is home state of child and either court determines that child and child's parents do not presently reside in other state); see also *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (if district court reaches correct result, its decision will be upheld even though it relied upon wrong ground or assigned erroneous reasons for its decision).

Affirmed.