IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 117,368
117,369
117,370
117,371
117,372

In the Interests of A.A.-F., M.A.-F., F.A.-F., B.C., and J.S.,
Minor Children.

SYLLABUS BY THE COURT

1.

Subject-matter jurisdiction raises a question of law subject to unlimited review.

2.

Kansas courts have authority—in other words, the judicial power—to hear only those matters over which they have jurisdiction. That jurisdiction derives from Article 3, sections 1, 3, and 6 of the Kansas Constitution. Those provisions grant Kansas courts jurisdiction as provided by law. Statutes serve as the usual mechanism for the law to define jurisdiction.

3.

The Revised Kansas Code for Care of Children, through K.S.A. 2018 Supp. 38-2203, generally confers original jurisdiction on Kansas courts to hold proceedings concerning any child who may be a child in need of care. But the Legislature placed limits on this jurisdiction, making it subject to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 2018 Supp. 23-37,101 et seq.

1

4.

The UCCJEA's drafters prioritized the jurisdictional grounds to help assure that only one state at a time exercises jurisdiction, thus avoiding conflicting orders. Courts in the child's "home state" have the highest and first priority. The term "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before commencement of a child-custody proceeding."

5.

Once a home state exercises jurisdiction over a child-custody proceeding, it generally has exclusive, continuing jurisdiction until a court makes findings that fall within a UCCJEA provision recognizing certain circumstances under which a different court may exercise jurisdiction.

6.

The party bringing an action and invoking a court's jurisdiction has the burden to establish jurisdiction.

7.

Usually full faith and credit or comity principles apply when a court of one state is presented with the order of another state. Under the Full Faith and Credit Clause of the United States Constitution, Article IV, § 1, a foreign judgment—that is, the judgment of another state—carries the same force and effect in Kansas as it has in the state where the judgment was rendered. If the Full Faith and Credit Clause applies, a judgment of a sister state with jurisdiction cannot be impeached for irregularities in the proceedings or erroneous rulings but must be regarded as binding, until set aside by the court rendering it or by a reviewing court on appeal. Generally, however, the Full Faith and Credit Clause does not apply to orders that are nonfinal or interlocutory. Those orders are generally

2

subject to principles of comity. Under comity principles, courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect.

8.

Kansas courts generally presume the validity of orders, journal entries, and judgments of the courts of other states.

9.

The party attacking another state's order has the burden of establishing the reasons it should not be enforced or applied.

10.

A Kansas court may exercise comity when Kansas law recognizes the rights upon which a decree of a sister state is based and the court decides that the enforcement of such rights does not violate any principle of Kansas public policy.

11.

On appeal, Kansas appellate courts review determinations of whether to exercise comity over a foreign order for an abuse of discretion. A district court abuses its discretion if it makes an error of law, makes an error of fact, or was otherwise arbitrary, fanciful, or unreasonable.

12.

The burden is on a party to designate a record sufficient to present its points to the appellate court and to establish its claims.

13.

Kansas appellate courts generally presume a district court has made sufficient findings of fact and conclusions of law to support its decision.

14.

In considering if there has been a violation of the right to procedural due process protected by the Fourteenth Amendment to the United States Constitution, a court weighs: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail.

15.

Parents have a fundamental liberty interest in the right to make decisions regarding the care, custody, and control of their children.

16.

The State's interest in a child's welfare may be asserted through state processes designed to protect children in need of care. But before a parent can be deprived of his or her right to the custody, care, and control of his or her child, the parent is entitled to due process of law. One of the fundamental requirements of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

17.

The failure to follow a statutorily required procedure does not inevitably result in a due process violation.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 29, 2017. Appeal from Geary District Court; MARITZA SEGARRA, judge. Opinion filed July 12, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Andy Vinduska*, of Manhattan, argued the cause and was on the briefs for appellant natural mother.

*Jason B. Oxford,* assistant county attorney, argued the cause, and *Michelle L. Brown*, assistant county attorney, was on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Acting under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), a California court transferred five cases to a Kansas court for the continuation of child in need of care proceedings. The natural mother (Mother) of the children challenges the Kansas court's subject-matter jurisdiction, pointing to potential issues arising from the transfer. Mother also raises a constitutional due process challenge based on the alleged failure of the Kansas district court to hold a timely, statutorily required permanency hearing.

Based on the record before us, we hold the Kansas district court did not abuse its discretion by accepting and exercising jurisdiction after the California court transferred jurisdiction. Nor did the Kansas court violate Mother's due process rights. As a result, we affirm the exercise of subject-matter jurisdiction by Kansas courts and the rulings made by the district court that are the subject of this appeal.

5

FACTS AND PROCEDURAL HISTORY

The proceedings transferred from California involve five of Mother's six children. The natural father of the three oldest children is A.F., and the natural father of the younger children is D.S. D.S. actively participated in the California and Kansas proceedings and objected to the exercise of jurisdiction by the Kansas court. A.F. never appeared and reportedly was in Mexico. Neither father is involved in this appeal.

The two oldest children, who were born in Kansas, have been in and out of protective custody since at least 2009. The three younger children have been in and out of custody since shortly after their births. When each child first became the subject of a child in need of care (CINC) proceeding, he or she resided in California with Mother and, at various times, with either A.F. or D.S. (California does not use the same child in need of care terminology as does Kansas. Even so, for consistency, we will refer to the California dependency proceedings and the Kansas proceedings as CINC proceedings.)

In October 2014, Mother had physical custody of all the children, although the California Department of Children and Family Services (DCFS) retained legal custody and supervision of at least some of them. At that time, Mother and D.S. were married and residing in California. An argument between Mother and D.S. devolved into a physical altercation that led to D.S.'s arrest. Mother then took the children to Geary County, Kansas, without informing D.S. The California court revoked the children's physical placement with Mother on October 27, 2014, and issued warrants in November 2017 for the children's return.

Upon D.S.'s release from custody, he traveled to Kansas to reunite with Mother and the children at the home of Mother's friends. D.S. physically confronted the friends and threatened them, leading authorities to arrest him. About two months after the

6

children had arrived in Kansas, Kansas officials returned the children to California under authority of the California warrants. In February 2015, the California court determined "[s]ubstantial danger exists to the physical health of minor(s) and/or minor(s) is suffering severe emotional damage, and there is no reasonable means to protect without removal from parent's or guardian's physical custody." At that time, the California court ordered a report on possible placement with the children's grandmother in Kansas and a possible transfer of the case to a Kansas court that could oversee the family's reintegration. Mother appealed that order. While it is unclear from the record before us what happened with that appeal, the record discloses additional review or progress hearings occurred in the California trial court. During this period, the California judge called Judge Maritza Segarra, a district judge in Geary County.

The various California investigations, reports, and hearings culminated on June 24, 2015, with a progress hearing at which the California court ordered the cases transferred to Kansas. The court's June 24, 2015, order stated:

"Pursuant to this Court's consultation with the Honorable Maritza Segarra, [Kansas] District Court Judge, and pursuant to the UCCJEA, this case is transferred to the Geary County District Court, 138 East 8th Street, Junction City, Kansas, 66441. The Department of Children and Family Services is ordered to send copies of all pleadings, orders and reports or other information contained in this Court's files to Judge Segarra forthwith. It is further ordered that minors be transported by the Department of Children and Family Services to the Kansas Department for Children and Families."

The California court transmitted copies of the pleadings, orders, and reports to the Geary County court but no transcripts of hearings. We thus know only the information recorded in written orders and journal entries. The June 24, 2015, order recites that Mother and D.S. appeared at the hearing through counsel. The record does not specify whether Mother and D.S. appeared in person. Later, in Kansas proceedings, Mother

7

testified she went to California to attend a hearing. She said the hearing "was right before the kids came back," but she denied being at the hearing at which the California court transferred the case to Kansas.

Nothing in the record indicates that Mother appealed the June 24, 2015, order. And, as ordered by the California court, the children were transported back to Kansas. The Geary County District Court then exercised jurisdiction and ordered the children remain in out-of-home placements.

About one month later, D.S. was arrested again, this time for domestic violence and making a criminal threat against Mother. His probation in his earlier Kansas case was revoked. He remained in custody throughout the remainder of the CINC proceedings.

Around the time of D.S.'s arrest, the Kansas Department for Children and Families (DCF) held a case plan meeting. The plan identified concerns but nonetheless identified its goal as reintegration of the family. Mother was assigned tasks toward reintegration, including attending counseling to address domestic violence issues and obtaining suitable housing and reliable income. She completed none of these tasks to DCF's satisfaction. The district court held a permanency hearing on October 14, 2015, at which the district court concluded that reintegration remained a viable alternative. But that ruling changed when, on November 4, 2015, the district court held a review hearing at which it heard evidence. At the end of that hearing, the court found "reintegration is no longer a viable option with the mother." The court held a series of review and status hearings thereafter. At a hearing on January 27, 2016, Mother asked for more time to work on alternatives other than termination of her parental rights. On October 12, 2016, the court held another permanency hearing.

Between the two permanency hearings, the State filed, and then amended, motions for a finding of unfitness and termination of parental rights. The district court held evidentiary hearings related to the amended motions over three days in late 2016 and early 2017. D.S. objected to the court's subject-matter jurisdiction early on the first day of the hearings. The district court asked counsel for the specific objection to Kansas jurisdiction. D.S.'s counsel replied that D.S. "just believes that California should have continued to exercise jurisdiction, and that Kansas should not have obtained jurisdiction, and the case should be transferred back to California. So I would just like that noted for a possible appeal issue."

The district court rejected the jurisdictional objection:

"The objection as to jurisdiction, although counsel is correct, jurisdiction can be raised at any time, there's nothing that's been shown to the Court that would indicate that jurisdiction is erroneously with this Court. This Court took jurisdiction under the UCCJEA and the [Interstate Compact on the Placement of Children, the] ICPC. The Court was—the Court followed the guidelines in conversations with the judge out of California. And this case was transferred. And no basis has been—there's no legal basis for—to support that this Court does not correctly have jurisdiction in this matter, so the Court will deny that request also."

D.S. raised his jurisdictional objection again on the second day of the termination hearing. Mother joined the motion. D.S.'s counsel argued there was no hearing on the jurisdictional issue in California. The district court disagreed, pointing to journal entries in the California record reflecting hearings on the issue. The district court again denied the motion. In its explanation, the court also outlined the conversation it had with the California court regarding the transfer:

"All right. [The] Court's going to deny the motion. It's obvious from the journal entries that both the mother and the father were represented by counsel. California,

9

correct, was the home state. But then the mother and the father both left the state of California and came here. The children were then picked up on an order out of the state of California, taken back to California. The parents apparently stayed here. And it may have been because, at that point in time, [D.S.] was already in jail, and so could not leave. The mother stayed here also. But there were at least two hearings in the state of California concerning this.

"The only thing that the judge called me on, the judge out of California, was to see, after they had had their hearings, if I would take the matter. I said, yeah, that's fine, and that was it. He said that he would contact—so—contact DCF to—or their DCF would contact DCF to get the kids down here. There was nothing about transfer of venue or anything like that because all those issues were taken up in California. It was properly done.

"Whether or not the judge over there recorded it or not, I don't know, because this Court did not initiate the contact, because I would not have even known that these children existed or that the parents existed until the court in California contacted me after they had their hearings, with counsel present, to transfer over here. The proper place to object would have been in California. That was never done. Neither party objected.

"Apparently, the guardian ad litem didn't object. No one objected, and then the case was transferred here where the parents were residing so that reintegration could be had, which was the—the case plan at that point in time.

"So the Court believes that the—given the record in this matter from California, which is part of the record of this Court, the motion is meritless, and the Court will deny the motion."

The parties do not cite any other evidence of the conversation in the record.

After hearing the evidence and arguments of the parties, the district court took under advisement the motion for a finding of unfitness and termination of parental rights.

The district court announced its ruling from the bench on January 24, 2017. The court found Mother unfit, the unfitness was unlikely to change in the foreseeable future, and termination of Mother's parental rights to be in the children's best interests. Mother appealed.

Before the Court of Appeals, Mother argued she neither consented to nor was given a meaningful opportunity to be heard regarding transfer of the case from California to Kansas in June 2015. She further argued Kansas lacked subject-matter jurisdiction because it was neither the home state of the children nor a more convenient forum because, even though the parents had moved to Kansas, the children still resided in California and the California court had volumes of records regarding the family.

The Court of Appeals rejected these arguments in a divided opinion. *In re A.A.-F.*, No. 117,368, 2017 WL 6625230, at *1 (Kan. App. 2017) (unpublished opinion). The two-member majority of the Court of Appeals panel determined the record falls short of demonstrating UCCJEA jurisdiction properly passed from California to Kansas. The majority reasoned it was therefore error for the district court to find there had been a legally adequate transfer of jurisdiction under the UCCJEA. But the majority concluded it need not remand for an adequate transfer of jurisdiction because it is a "foregone conclusion" Kansas would have jurisdiction by the time of the termination given that the children had resided in Kansas from around July 2015 until the termination hearing in early 2017. 2017 WL 6625230, at *8. Further, the majority concluded that even though the district court lacked jurisdiction when it terminated Mother's parental rights, the orders should be viewed as unenforceable rather than void because the UCCJEA only imposed a conditional limitation on the district court's jurisdiction. Once Kansas acquired jurisdiction, the "dormant" orders became "'activated,'" meaning they became effective and enforceable. 2017 WL 6625230, at *8.

11

Addressing Mother's due process arguments, the majority concluded the due process right at issue was Mother's liberty interest in parenting her children. The majority held that no violation of this right occurred because Mother's rights were protected at the termination hearing. "An untimely or nonexistent permanency hearing months earlier did not entail a due process violation bearing on or diminishing Mother's protected liberty interest." 2017 WL 6625230, at *10.

The majority rejected Mother's third and fourth arguments as well. As to the third argument, it concluded sufficient evidence supported the district court's finding that Mother was unfit. Finally, it rejected Mother's fourth argument that the district court erred in holding the termination of Mother's parental rights furthered the children's best interests. 2017 WL 6625230, at *10-11. Accordingly, the panel affirmed the termination of Mother's parental rights. 2017 WL 6625230, at *12.

Judge Kathryn Gardner concurred. She agreed with the majority's analysis on the second, third, and fourth issues regarding Mother's due process rights, the sufficiency of the evidence supporting the unfitness findings, and the appropriateness of the district court's best-interests-of-the-child determination. But she followed a different path in concluding the district court had jurisdiction. She first pointed out that Mother had the burden to designate a record sufficient to establish the claimed error and failed to meet this burden by not including the court transcripts from the California hearings or objecting earlier to jurisdiction once in Kansas. Based on the insufficient record, Mother, in Judge Gardner's view, failed to establish any error in the California court's transfer of jurisdiction under the UCCJEA. The concurrence also noted that Mother appeared at the California hearing through her attorney and was thereby given an opportunity at that time to contest the transfer. 2017 WL 6625230, at *12-13 (Gardner, J., concurring). Finally, Judge Gardner noted that "Mother did not object below that the journal entry transferring jurisdiction to Kansas lacked sufficient findings to support its decision; thus, we

12

ordinarily presume that the court made sufficient findings to support its decision." 2017 WL 6625230, at *13 (Gardner, J., concurring).

Mother timely filed a petition for review, which this court granted. This court's jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

Mother raised only two issues in her petition for review: (1) whether the Court of Appeals erred in affirming the district court's subject-matter jurisdiction and (2) whether it erred in determining Mother's procedural due process rights were not violated when the district court failed to conduct a permanency hearing within 30 days of finding that reintegration of the family with Mother did not remain a viable alternative. Mother did not seek our review of the two other issues she had raised before the Court of Appeals regarding the sufficiency of evidence on Mother's unfitness and her allegation the district court erred in finding that terminating Mother's parental rights was in the children's best interests. Mother has waived our consideration of these issue by failing to raise them in her petition for review. See *State v. Fleming*, 308 Kan. 689, 692-93, 423 P.3d 506 (2018); see also Supreme Court Rule 8.03(b)(6)(C)(i) (2019 Kan. S. Ct. R. 55) ("The Supreme Court will not consider issues . . . not presented or fairly included in the petition for review.").

We turn to the two issues Mother raised in her petition.

13

1. *On the record before us, Kansas courts have subject-matter jurisdiction.*

Mother first argues the Court of Appeals erred in holding Kansas had subject-matter jurisdiction. This argument initially raises a question of law subject to unlimited review. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). As we will discuss, however, the particular circumstances of this case require us to apply a layered standard of review.

At this initial layer, we conclude the State met its initial burden of establishing that the Geary County District Court had subject-matter jurisdiction over the five CINC proceedings. Kansas courts have authority—in other words, the judicial power—to hear only those matters over which they have jurisdiction. That jurisdiction derives from Article 3, sections 1, 3, and 6 of the Kansas Constitution. Those provisions grant Kansas courts jurisdiction as provided by law. See *Dunn*, 304 Kan. at 811. Statutes serve as the usual mechanism for the law to define jurisdiction. See *State v. Dupree*, 304 Kan. 43, 53, 371 P.3d 862 (2016) (addressing appellate jurisdiction); *State v. Valladarez*, 288 Kan. 671, 675, 206 P.3d 879 (2009) (addressing subject-matter jurisdiction of district courts).

By statute, Kansas district courts "have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." K.S.A. 20-301. And, more specific to this case, the Revised Kansas Code for Care of Children generally confers original jurisdiction on Kansas courts to hold proceedings concerning any child who may be a child in need of care. K.S.A. 2018 Supp. 38-2203; see also K.S.A. 2018 Supp. 38-2202(d) (defining "child in need of care"). But the Legislature placed limits on this jurisdiction, making it "[s]ubject to the uniform child custody jurisdiction and enforcement act, K.S.A. 2018 Supp. 23-37,101 through 23-37,405." K.S.A. 2018 Supp. 38-2203(b); see also *In re A.A.*, 51 Kan. App. 2d 794, 806, 354 P.3d 1205 (2015). Both California and Kansas have enacted the UCCJEA. See K.S.A. 2018 Supp. 23-37,101 et

14

seq.; Cal. Fam. Code § 3400 et seq.; see also *In re Adoption of H.C.H.*, 297 Kan. 819, 829-30, 304 P.3d 1271 (2013) (discussing area in which the Kansas enactment departed from the proposed UCCJEA).

The UCCJEA is a uniform act drafted by the National Conference of Commissioners on Uniform State Laws. It has been adopted by 49 states, the District of Columbia, Guam, and the U.S. Virgin Islands. The UCCJEA places limits on courts in situations where two or more states might have an interest in a child-custody matter. It sets criteria for determining which state has initial jurisdiction, for declining jurisdiction, for a second court to exercise jurisdiction, and for enforcing and for exercising jurisdiction to modify custody decrees. These measures "arose out of an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum-shopping, and the drawn-out and complex child custody legal proceedings often encountered by parties where multiple states are involved." Annot., 52 A.L.R.6th 433.

The UCCJEA's drafters prioritized the jurisdictional grounds to help assure that only one state at a time exercises jurisdiction, thus avoiding conflicting orders. Courts in the child's "home state" have the highest and first priority. 52 A.L.R.6th 433. The term "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before commencement of a child-custody proceeding." K.S.A. 2018 Supp. 37,102(8) (UCCJEA 102); K.S.A. 2018 Supp. 23-37,201 (limiting jurisdiction over initial child-custody determination to home state or as otherwise provided by statute) (UCCJEA 201); see also Annot., 100 A.L.R.5th 1. Here, California was the home state when each of the five CINC proceedings began and when jurisdiction was transferred to Kansas.

15

Once a home state exercises jurisdiction over a child-custody proceeding, it generally has "exclusive, continuing jurisdiction" until a court makes findings that fall within a UCCJEA provision recognizing certain circumstances under which a different court may exercise jurisdiction. K.S.A. 2018 Supp. 23-37,202. Three provisions most commonly apply to determinations of whether jurisdiction may shift from one state to another. First, the court with continuing jurisdiction—here California—could determine the children and their parents no longer have a significant connection with the home state" and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." K.S.A. 2018 Supp. 23-37,202(a)(1) (UCCJEA 202); see also Cal. Fam. Code § 3422(a)(1). Second, a California court or a court of another state, such as Kansas, could determine the children and their parents no longer reside in California. K.S.A. 2018 Supp. 23-37,202(a)(2) (UCCJEA 202); see also Cal. Fam. Code § 3422(a)(2). Third, a court with jurisdiction "may decline to exercise its jurisdiction at any time if it determines it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." K.S.A. 2018 Supp. 23-37,207 (UCCJEA 207) (listing eight nonexclusive factors to be considered); Cal. Fam. Code § 3427. While several of these circumstances allowing a transfer of jurisdiction arguably apply here, as Mother points out, the California order does not specify which UCCJEA provision the California court relied on to justify the transfer.

While we do not know the specific provision relied upon, we know the procedures the California court followed. The California judge gave notice that a transfer of jurisdiction was being considered, asked for reports, and gave notice of subsequent hearings at which the issue would be discussed. We know that at one point, the California judge called Judge Segarra. And Judge Segarra informed the parties about the conversation. The UCCJEA authorizes a judge in one state to call a judge in another state to discuss jurisdictional and venue issues. K.S.A. 2018 Supp. 23-37,110(a) (UCCJEA

16

110); Cal. Fam. Code § 3410(a). Parties may be allowed to participate in the communication and, if they are not included in the communication, must be allowed to present facts and argument regarding jurisdiction before a decision. K.S.A. 2018 Supp. 23-37,110(b); Cal. Fam. Code § 3410(b). While we do not know if the parties participated, we know the California court held at least one hearing after the judge's phone call with Judge Segarra. Some record of the communication, which the UCCJEA defines as information inscribed, must be kept. K.S.A. 2018 Supp. 23-37,110(d) & (e); Cal. Fam. Code § 3410(d) & (e). We do not have that record.

Even though we do not have the record, nothing suggests Mother objected to a lack of information about the conversation before the transfer occurred. In fact, it does not establish she lacked the information. Without transcripts, we do not know what was relayed to the parties and their attorneys or even whether the attorneys were present when the call was made. But we know that through Mother's attorney, and at times through her own appearance in court, Mother had multiple opportunities to present evidence and arguments to the California court regarding that transfer. We also know Mother did not appeal the California ruling to transfer the proceedings to Kansas, even though she had appealed a previous order. And Judge Segarra expressed her understanding that no one objected to the transfer.

Against that background, Mother argues the Kansas district court erred in accepting jurisdiction. As in all proceedings, the party bringing an action and invoking the court's jurisdiction—here, the State—has the burden to establish jurisdiction. See *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006) (holding generally that party invoking jurisdiction has burden to establish its basis); see also *In re Baby Boy M.*, 141 Cal. App. 4th 588, 599, 46 Cal. Rptr. 3d 196 (2006) (agreeing that state agency, which initiated the dependency proceedings, bore the burden of establishing the court's jurisdiction).

17

The State made a prima facie showing of jurisdiction by presenting a court order from California transferring its jurisdiction to Kansas. This order, at least on its face, evidenced that the home state had transferred its jurisdiction under the UCCJEA to the Geary County District Court. And Judge Segarra had visited with the California judge and knew of its decision. The purposes of the UCCJEA were thus satisfied because Judge Segarra knew California was transferring its jurisdiction and there would not be multiple —and potentially conflicting—court actions involving the family. Further, both Mother and D.S. were in Kansas and A.F. was not in either state. These circumstances distinguish this case from others where no UCCJEA inquiry occurred before a Kansas court exercised jurisdiction or where one parent resided in one state and the other in a second state. See, e.g., *In re A.A.*, 51 Kan. App. 2d at 806 (holding district court erred in assuming "Kansas court had proper subject-matter jurisdiction without considering the UCCJEA, even though Mother had filed a response mentioning the Mississippi court proceedings"). As a matter of law, the State met its burden of establishing a prima facie showing of subject-matter jurisdiction.

Mother asks us to look behind the order and consider what she alleges to be procedural defects and deficiencies in the findings. She does not cite a provision of the UCCJEA granting us the authority to review the validity of the California order. Nevertheless, general full faith and credit and comity principles guide us, as does K.S.A. 2018 Supp. 23-37,313 (UCCJEA 313).

Usually full faith and credit or comity principles apply when a court of one state is presented with the order of another state. See *Padron v. Lopez*, 289 Kan. 1089, 1108, 220 P.3d 345 (2009). Under the Full Faith and Credit Clause of the United States Constitution, Article IV, § 1, a foreign judgment—that is, the judgment of another state— carries the same force and effect in Kansas as it has in the state where the judgment was

18

rendered. *Hamilton v. Netherton*, 194 Kan. 683, 685, 401 P.2d 657 (1965). If the Full Faith and Credit Clause applies, "[a] judgment of a sister state where there is no want of jurisdiction cannot be impeached for irregularities in the proceedings, or erroneous rulings. It is to be regarded as binding until set aside by the court rendering it or by a reviewing court upon appeal." *Littlefield v. Paynter*, 111 Kan. 201, 205, 206 P. 1114 (1922). Generally, however, the Full Faith and Credit Clause does not apply to orders that are nonfinal or interlocutory. See *Padron*, 289 Kan. at 1101-03. Those orders are generally subject to principles of comity. Under comity principles, "courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 289 Kan. at 1108.

Neither the parties nor the Court of Appeals discussed these principles; yet, they govern our consideration. K.S.A. 2018 Supp. 23-37,313 (UCCJEA 313) requires Kansas courts to "accord full faith and credit to an order issued by another state and consistent with this act which enforces a child-custody determination by a court of another state" unless certain exceptions apply. Here, we are not faced with a final, enforceable child-custody determination but an ongoing proceeding. And the parties do not discuss whether the transfer order, which terminated California's jurisdiction, should be considered a final order. We will assume, without deciding, it does not fall under K.S.A. 2018 Supp. 23-37,313 or general principles of full faith and credit.

Instead, for present purposes only, we will consider the order to be one to which principles of comity apply. Because we find no UCCJEA provision relating to those principles, some general principles come into play. First, we generally presume the validity of orders, journal entries, and judgments of the courts of other states. Second, we place the burden of undermining the other state's order on the party attacking it. *Padron*, 289 Kan. at 1099. Third, "[i]t is appropriate to exercise comity when a court recognizes the rights upon which a decree of a sister state is based and decides that the enforcement

19

of such rights does not violate any principle of public policy of the forum court's state." 289 Kan. at 1108.

Here, while K.S.A. 2018 Supp. 23-37,313 does not apply because it relates only to full faith and credit situations, it informs us that a Kansas court should consider whether the other state's judgment is "consistent" with the UCCJEA. This guides our determination that Kansas courts applying comity principles should also consider whether any order transferring jurisdiction in a child-custody proceeding is consistent with the UCCJEA because in that situation the Act expresses Kansas' policy.

Here, the Kansas district court determined it and the California court "followed the guidelines" in the UCCJEA by having the telephone conference and in ordering and accepting the transfer. Judge Segarra informed the parties that she was aware there had been two hearings in the state of California about transfer, no one had objected to the transfer, the California court had asked if she would accept the transfer, and she said she would. She explained the case "was transferred here where the parents were residing so that reintegration could be had." She also informed the parties no details had been shared about the basis of the ruling "because all those issues were taken up in California," the decision had been made to transfer the case and the California judge simply asked if she would accept jurisdiction, and "[t]he proper place to object would have been in California." In essence, although not using the word, the district court found the California order to be "consistent" with the UCCJEA.

On appeal, we review determinations of whether to exercise comity over a foreign order for an abuse of discretion. *Padron*, 289 Kan. at 1108. A district court abuses its discretion if it makes an error of law, makes an error of fact, or was otherwise arbitrary, fanciful, or unreasonable. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). Thus, as opposed to most cases dealing with subject-matter jurisdiction, in

20

comity situations we apply a layered standard of review when jurisdiction is facially established by an order of transfer from another state but comity principles require a determination of whether exercising that jurisdiction is consistent with the UCCJEA.

Although Mother did not use an abuse of discretion framework, on appeal she argues the jurisdiction should not have been accepted because she did not have "an opportunity to present facts of the transfer because she was in Kansas at the time of the hearing." She also asserts she did not consent to transfer, the California order does not reflect the basis for the transfer, California remained the home state and residence of the children, and California had volumes of records regarding the family.

The record supports Mother's argument that California did have voluminous records about the family. But copies of those were transmitted to Kansas. And while those records contain important historical information, they did not document the current situation of the Mother and children in Kansas.

Further, Mother has not presented us with a record, or at least citations to the record, establishing that she did not have a meaningful opportunity to argue against the transfer. Mother has the obligation to insure a sufficient record for us to consider those arguments and to provide citations that direct our consideration. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013) ("'It is well-settled that the burden is on a party to designate a record sufficient to present its points to the appellate court and to establish its claims.'"). If, as here, an argument depends on facts, those facts must be in the record. 296 Kan. at 644. If anything, the record suggests Mother had an adequate opportunity to contest a transfer.

The California court held multiple hearings on the question of transfer. And, Mother attended at least one hearing in California after the children were returned to

21

California after service of the California warrants. Nothing in the record suggests she was not or could not have been present for any other hearings. The record further reveals notice was given of hearings in California and her attorney was present at all hearings. Mother did not explain to Judge Segarra or us what evidence she was unable to present to the California court or why she was not able to be present. Ironically, the difficulties caused by both her and D.S. being in Kansas while court proceedings occurred in California are factors justifying a transfer to Kansas. Simply put, the record shows she had the opportunity through counsel, if not herself, to present evidence and arguments about the transfer.

In addition, as Judge Segarra noted, Mother had the opportunity to object in California to the transfer, but she did not. (Although the record does not show she consented.) And she did not seek appellate review in California of the transfer order. See, e.g., *Brewer v. Carter*, 218 Cal. App. 4th 1312, 1314, 1319-20, 160 Cal. Rptr. 3d 853 (2013) (reversing trial court order allowing transfer to Illinois because it was a more convenient forum); *Taylor M. v. Superior Court*, 106 Cal. App. 4th 97, 110-11, 130 Cal. Rptr. 2d 502 (2003) (granting mandamus relief and vacating order based on conclusion the referee abused discretion in ceding jurisdiction to Texas where only one of the eight statutory factors favored the jurisdictional transfer). In other words, the record establishes that Mother did not avail herself of the opportunities to be heard regarding the transfer that the California courts made available to her.

Mother's strongest point, the one that gained traction with the panel, relates to the California court's failure to reference the basis for the transfer or include factual findings in its June 24, 2105, order. Nevertheless, under principles of comity, we generally accord a sister court's actions the same degree of deference we would give a court of this state. See *Padron*, 289 Kan. at 1108. Both California appellate courts and Kansas appellate courts generally presume a district court has made sufficient findings of fact and

22

conclusions of law to support its decision. See *State v. Longoria*, 301 Kan. 489, 506, 343 P.3d 1128 (2015) (discussing district court's failure to discuss factors argued by parties when ruling on motion and holding that where party fails to object to sufficiency of findings, appellate courts presume the district court made the findings necessary to support the ruling); see also *In re Marriage of Arceneaux*, 51 Cal. 3d 1130, 1133-34, 275 Cal. Rptr. 797, 800 P.2d 1227 (1990) ("if a party does not bring such deficiencies [in findings] to the trial court's attention, he waives his right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment"); *Brewer*, 218 Cal. App. 4th at 1320 (discussing doctrine of implied findings).

Further, at least two justifications exist under the UCCJEA for the transfer. First, because both Mother and D.S. had moved to Kansas and Mother had taken the children with her, the California court could have determined the children and the parents no longer had a significant connection with the home state of California "and that substantial evidence is no longer available in this state concerning the child[ren]'s care, protection, training, and personal relationships." See Cal. Fam. Code § 3422(a); see also K.S.A. 2018 Supp. 23-37,202(a)(1) (UCCJEA 202). As Judge Segarra found, if reintegration was to occur, the plan needed to be developed in Kansas, and evidence about reintegration would be available in Kansas, not California. Second, the court could have determined Kansas was a more convenient forum. See Cal. Fam. Code § 3427; see also K.S.A. 2018 Supp. 23-37,207 (UCCJEA 207). Many of the eight factors weigh toward finding that Kansas is the more convenient forum, including the distance between California and Kansas where Mother was residing and had expressed an intent to remain; Mother's limited financial resources; the existence of evidence regarding the children's and Mother's living, work, and general circumstances in Kansas; and the presence of witnesses in Kansas who would testify about those circumstances. See Cal. Fam. Code

23

§ 3427(b) (listing factors); see also K.S.A. 2018 Supp. 23-37,207(b) (listing substantially the same factors).

While Mother argues against either of those determinations, she essentially asks us to reweigh evidence and factors and override the California court. For support of our doing so, Mother relies on *In re A.A.*, 51 Kan. App. 2d 794. But the facts of that case distinguish it and leave Mother without cited caselaw supporting her argument.

*In re A.A.* also involved proceedings begun in another forum, there, a divorce in Mississippi. And, like here, the State argued the Mississippi court appropriately transferred jurisdiction. But the *In re A.A.* Court of Appeals panel noted the Mississippi order was limited to a transfer of issues of contempt and other issues "'not herein ruled upon.'" 51 Kan. App. 2d at 810. And the State had not pointed to any document showing that a determination of change of custody was an issue pending before the Mississippi court. Given the limited nature of the transfer order, the *In re A.A.* panel refused to presume the Mississippi court had made the findings necessary to support an order transferring a determination of child custody to Kansas. The panel remanded to allow the lower courts in both Kansas and Mississippi to make the requisite findings. *In re A.A.*, 51 Kan. App. 2d at 810-13.

Here, however, the California court did not limit the proceedings it transferred. And the California record before us is not inconsistent with a conclusion that we can presume the trial court made the necessary findings that would support the transfer order. While we do not have transcripts, the record we have supports the legal possibility that transfer would be appropriate. And procedurally, we know the California court provided an opportunity for Mother to be heard and to present evidence. Judge Segarra understood those facts and also understood no one objected to the transfer. Thus, we presume the

24

California court made findings that supported transfer under either Cal. Fam. Code § 3422(a) (UCCJEA 202) or Cal. Fam. Code § 3427 (UCCJEA 207). See K.S.A. 2018 Supp. 23-37,202(a); K.S.A. 2018 Supp. 23-37,207.

To rebut the presumption, Mother had the burden of establishing a record sufficient for our determination of her arguments. See *Kelly*, 287 Kan. at 526. But she did not. The record before us establishes the California court had CINC proceedings pending before it. It had conducted hearings about the transfer, conferred with Judge Segarra, and ordered the transfer. On that record, we presume the necessary findings to support the order. And Mother did not appeal that ruling.

We, therefore, hold the Kansas district court did not abuse its discretion in exercising jurisdiction over the CINC proceedings. And doing so was consistent with the purposes of the UCCJEA.

2. *Mother's procedural due process rights were not violated.*

Finally, Mother argues we should set aside Judge Segarra's determinations (1) not to proceed with reintegration and (2) to terminate parental rights because doing so was in the children's best interests. She rests her argument on the district court's alleged failure to comply with a Kansas statute that applies "[i]f the court determines at any time other than during a permanency hearing that reintegration may not be a viable alternative for the child" and requires a permanency hearing "no later than 30 days following that determination." K.S.A. 2015 Supp. 38-2264(e). She argues the failure to comply with the statute violated her procedural due process rights. Both the district court and Court of Appeals rejected her arguments, and we affirm. See *In re A.A.-F.*, 2017 WL 6625230, at *10.

To establish a due process violation, Mother must show she was both entitled to and denied a specific procedural protection. In considering the procedural protection required, a court weighs:

"(1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail." *In re J.D.C.*, 284 Kan. 155, 166-67, 159 P.3d 974 (2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]; *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409-10, 49 P.3d 1274 [2002], *cert. denied* 537 U.S. 1088, [2002]).

Mother notes that, as a parent, she has a fundamental liberty interest in the right to make decisions regarding the care, custody, and control of her children. This principle is without dispute. See *In re J.D.C.*, 284 Kan. at 166 (citing *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 [2000]; *Sheppard v. Sheppard*, 230 Kan. 146, 152, 630 P.2d 1121 [1981], *cert. denied* 455 U.S. 919 [1982]). Mother then argues that right extends to the determination that reintegration is no longer viable. She cites no law for this proposition. Even so, her argument carries weight because the reintegration arrangement arises in an effort to maintain a parent's rights to the care, custody, and control of his or her children. In other words, Mother has rights at stake and arguably some protection should be afforded the decision that reintegration is not a viable alternative because it involves a step in the process that may ultimately terminate parental rights.

A parent's constitutional rights are not without limits, however. The State's interest in a child's welfare may be asserted through state processes designed to protect children in need of care. See *In re J.D.C.*, 284 Kan. at 166. Nevertheless, "[b]efore a parent can be

deprived of [his or] her right to the custody, care, and control of [his or] her child, he or she is entitled to due process of law." 284 Kan. at 166. And one of "[t]he fundamental requirement[s] of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 284 Kan. at 166 (citing *Mathews*, 424 U.S. at 333; *Winston*, 274 Kan. at 409).

Here, Mother had notice of the hearing at which the decision was made to find reintegration no longer viable. She also had an opportunity to be heard.

Nevertheless, Mother posits that the failure to hold a statutorily mandated permanency hearing within 30 days violated her constitutional due process right to a meaningful, timely hearing. See 2015 Supp. K.S.A. 38-2264(e). We assume without deciding that the 30-day requirement is mandatory. But see *Ambrosier v. Brownback*, 304 Kan. 907, 915, 375 P.3d 1007 (2016) (interpreting "shall" as used in a statute to be directory rather than mandatory). The key consideration is whether the delay meant Mother lacked a meaningful opportunity to be heard. Certainly, at times, delay can eviscerate the ability to meaningfully accomplish the purpose of a permanency hearing. But not always. And the failure to follow a statutorily required process does not inevitably result in a due process violation. See *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 242, 305 P.3d 729 (2013); see also *First Assembly of God v. Collier County, Fla.*, 20 F.3d 419, 421-22 (11th Cir. 1994) (county's failure to comply with state statute violated state law but did not amount to federal constitutional due process violation where minimum constitutional requirements of some kind of notice and hearing were met).

To establish the constitutional violation, Mother must show the process followed in this case created a risk she would be erroneously deprived of her interests. See *In re J.D.C.*, 284 Kan. at 166-67 (holding that claimant must establish "the risk of erroneous

27

deprivation of the [particular liberty] interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards"). Mother has not met this burden.

The Kansas court held a full, evidentiary hearing in November 2015 when it made the determination that reintegration was not viable. The State presented an expert report, and, along with DCF, argued the report supported finding reintegration no longer viable. Mother's counsel argued otherwise, pointing to the expert's opinion about the best path toward reintegration. Mother's counsel also requested and received an opportunity to present Mother's testimony. Mother's counsel argued for continued efforts toward reintegration consistent with the expert's proposed reintegration plan—a plan that would reintegrate the children in stages.

After hearing this testimony and the parties' arguments, the district court reviewed the facts. The district court acknowledged the relatively short time the case had been pending in Geary County but noted the extended history in California dating back to 2009. The court found that the record established that the children had been in and out of protective custody over that approximately seven-year period. The court further found that "there have been a multitude of services that have been provided to this family, and these children are no closer to going home and being able to be maintained at home in a safe environment, th[a]n they were when they were first taken into custody." The court highlighted Mother's testimony indicating she presently had a sex offender living in her home, which precluded returning the children there. Ultimately, the district court returned to the State's expert report, which the court read as concluding Mother would remain unable to parent the children appropriately despite the plan of attempting reintegration in stages. In light of Mother's history, the expert's report, and Mother's lack of progress in having her children returned to her custody, the court found "reintegration is no longer a viable option with the mother."

The district court's decision was not the final ruling on whether Mother would or could regain her right to parent her children, however. Less than 90 days later, the court held a review hearing. At that hearing, Mother's attorney informed the court that Mother was working on alternative plans with the goal of avoiding termination of parental rights. Mother asked for a continuance. The court held hearings at regular intervals.

Then, on October 12, 2016, the court held a permanency hearing. See K.S.A. 2015 Supp. 38-2264(d) ("A permanency hearing shall be held within 12 months of the date the court authorized the child's removal from the home and not less frequently than every 12 months thereafter."). Mother did not appear even though, according to the court's findings, she had been given notice of this hearing. A witness stated Mother had said she would be at the hearing. Then, the court conducted several days of hearings in late 2016 and early 2017 on the State's motion for a finding of unfitness and termination of parental rights. Not until February 23, 2017, did the court enter an order finding Mother "unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future," and terminating Mother's parental rights.

Mother fails to argue what more she would or could have done with an earlier opportunity to address the changed goal within 30 days of the court's November 2015 ruling that reintegration was no longer a viable alternative. And we find no record—and Mother does not cite to one—establishing that she objected to a delay in the hearing. In summary, Mother had the opportunity to fully litigate the viability of reintegration before the judge terminated her parental rights. She had multiple opportunities to request a rehearing on the viability determination. And the record shows some of the delay was at her request. She has not shown what would have changed in 30 days after the viability ruling or what other evidence she would have submitted and has failed to establish that

29

the failure to conduct the permanency hearing within 30 days increased the risk of erroneously depriving her of her rights or that there was probable value in having the hearing within that time frame.

Here, minimal due process requirements were met. Therefore, even assuming Mother's interest in a timely permanency hearing is a constitutionally protected interest, Mother has failed to show a constitutional due process violation resulting from the failure to comply with a Kansas statute.

In her petition for review, Mother argues this result "effectively from the bench legislate[s] out the requirement of permanency hearings." We disagree. The statutory requirement stands, and Kansas courts should follow that statute. Our holding simply means a constitutional violation has not been established under the facts of this case. Other facts may lead to a different holding, and, knowing that, we are confident Kansas district courts will not read our conclusion that the failure to comply with a statutory requirement in this case did not violate constitutional due process as license to ignore K.S.A. 2015 Supp. 38-2264(e).

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.