NOT DESIGNATED FOR PUBLICATION

No. 127,198

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of I.W.,
a Minor Child.


MEMORANDUM OPINION


Appeal from Neosho District Court; MELISSA DUGAN-FARREN, magistrate judge. Submitted without oral argument. Opinion filed February 21, 2025. Affirmed.


*Kenna B. Bideau-Kepley*, of Chanute, for appellant.


*Timothy D. Clover,* guardian ad litem, of Chanute.


No appearance by appellee.


Before ISHERWOOD, P.J., WARNER and HURST, JJ.


PER CURIAM: After Mother failed to make any meaningful progress on her court-ordered reintegration plan, the district court terminated her parental rights to her minor child, I.W. At the time of the termination hearing, I.W. had been out of Mother's custody for over half her life, and Mother had not visited her in over a year. Mother's failure to progress toward reintegration, even when she was not incarcerated, demonstrates her present unfitness is unlikely to change in the foreseeable future. Finding no error, this court affirms the district court's termination of Mother's parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2021, a Chanute Police Department officer responded to a possible incident of domestic violence at the residence of Mother and Father and their minor child, I.W. At the time, the residence contained drugs and drug paraphernalia for which Mother and Father were arrested and charged. I.W. was about one-and-a-half years old at the time and was taken into police protective custody and placed with a foster family. Less than a week later, the State filed a petition alleging I.W. was a child in need of care because she was (1) "without adequate parental care, control or subsistence and the condition [was] not due solely to the lack of financial means of the child's parents or other custodian" and (2) "without the care or control necessary for the child's physical, mental or emotional health." See K.S.A. 38-2202(d)(1), (d)(2).

The petition asserted an emergency existed necessitating I.W.'s out-of-home placement because of the residence's unsanitary living conditions and the presence of drugs. The district court entered an ex parte order of protective custody that same day, appointed both parents counsel to represent them, and appointed I.W. a guardian ad litem.

Following a temporary custody hearing, the district court ordered I.W. be placed in the temporary custody of the Kansas Department for Children and Families (DCF) because both parents were in jail. In its subsequent journal entry and order of adjudication, the district court found I.W. to be a child in need of care on the basis that there was clear and convincing evidence that I.W. was without adequate parental care, control, or subsistence, and the condition was not due solely to the lack of her parents' financial means and because she was without the care or control necessary for her physical, mental, or emotional health. The district court further ordered I.W. remain in DCF custody and in her current out-of-home placement.

2

The district court also approved a permanency plan with the goal of reintegrating I.W. with her parents. The reintegration plan required that Mother (1) complete parenting classes; (2) undergo mental health treatment; (3) complete classes and submit urinalysis samples for drugs and alcohol; and (4) pursue her education to receive a GED. Upon Mother's release from jail in June 2021, workers from The Family Initiative, Inc. (TFI) met with her to go over the requirements of the reintegration plan. Following I.W.'s initial placement in state custody, Mother was arrested for possession of methamphetamine two more times before the termination hearing.

In May 2023, the State filed a motion for finding of unfitness and termination of both Mother and Father's parental rights, alleging:

> "4. The specific allegations are:
> The minor child has been out of the home for over two years. . . . Child was placed into police protective custody due to parents being arrested for drugs. Child was adjudicated a CINC on December 16, 2021.

> "5. As of April 17, 2023 [Mother] has made no progress on case plan tasks for communicating with TFI. The phone number for [Mother] is no longer in service. [Father] is still incarcerated at the Neosho County jail and has made no progress towards case plan task. TFI attempted to meet with [Father] on 03/07/2023 and [Father] refused the visit.

> "6. Case Plan Goals Not Completed or Not Successful

>> • TFI will create a Family Action Plan with [Mother] to address the critical concerns of domestic violence, substance abuse, housing, income, mental health, UA's, and parenting education. No progress has been made on Case Plan task.
>> • [Mother] will complete a drug and alcohol evaluation and follow all recommendations. Parents will also complete random UA's at the TFI office local to them. No progress has been made on Case Plan task.

3

- [Mother] will complete a mental health intake and follow all recommendations. No progress has been made on Case Plan task.
- [Mother] will complete an approved parenting class curriculum that addresses the effects that domestic violence and substance abuse has on children. No progress has been made on Case Plan task.
- [Father] will complete a drug and alcohol evaluation and follow all recommendations. Parents will also complete random UA's at the TFI office local to them. No progress has been made on Case Plan task.
- [Father] will complete a mental health intake and follow all recommendations. No progress has been made on Case Plan task.
- [Father] will complete an approved parenting class curriculum that addresses the effects that domestic violence and substance abuse has on children. No progress has been made on Case Plan task.

Child has had no visitation with her mother since September 20, 2022.

The parents were given case plan tasks to complete for the return of the child. The parents have not completed those tasks."

Father later voluntarily relinquished his parental rights to I.W. Mother, however, contested the petition.

On October 6, 2023, the district court conducted a severance hearing on the State's petition where I.W.'s case manager from TFI testified that I.W. had been out of the home for well over half her life. The case manager, who had been assigned the case for a little over a year, testified that Mother had not completed any case plan goals during the time the manager had been on the case. At the time of the termination hearing, it had been over a year since Mother's last visit with I.W. Upon being asked by Mother's counsel if it would be "fair to say that while serving time in Neosho County Jail, [Mother]'s access to services to be able to complete case plan tasks were limited," the case manager answered, "Yes." The case manager also confirmed that inmates in the Kansas Department of

4

Corrections (KDOC) have access to parenting classes, mental health treatment, drug and alcohol treatment, and educational opportunities.

At the time of the hearing, Mother was serving a prison sentence in the KDOC, and she testified that she had 13 months left on the sentence. Mother testified that since I.W.'s placement in state custody, Mother had been arrested twice for possession of methamphetamine—once in June of 2021 and again in October of 2021. Mother testified that Neosho County Jail did not offer drug and alcohol treatment, parenting classes, educational services to complete her GED, or employment training. Mother also testified that she could not afford the mental health treatment the jail offered. However, Mother testified she was receiving mental health treatment in prison and was on a waiting list for parenting classes, GED classes, and drug and alcohol treatment. Mother also testified there was a worker in the prison who could help her accomplish her reintegration plan tasks.

At the hearing, Mother explained that she wanted additional time to complete the reintegration plan tasks during this exchange with her attorney:

"Q. . . . And is it your—is it your intention to complete all your case plan tasks while you—while you are in DOC?

"A. Yes, if I may have the chance.

"Q. So if you are given additional time to complete those case plan tasks, you feel as if they would be—you would be able to complete them all.

"A. Yes, ma'am.

"Q. And are you asking the Court not to sever your parental rights today in order to give you time to complete those case plan tasks?

"A. I would greatly appreciate that."

The State's attorney then questioned Mother about her failure to complete the reintegration plan tasks when she was not incarcerated:

5

"Q. [Mother], isn't it true that you were not in custody between July 7th of 2022 to May 3rd of this year?

"A. Yes, sir, that's correct.

"Q. Okay. And during that time, you were able to get into a relationship and get engaged to be married?

"A. Yes.

"Q. And then your marriage license application was made June 1st of this year.

"A. Uh-huh.

"Q. Okay. So during that time in which you were out of custody—it's not quite a year, but isn't it true you didn't see your child during that time period?

"A. Yes, sir.

"Q. And there was no jail that was keeping you from having that happen; isn't that true?

"A. Yes, sir.

"Q. Okay. And isn't it true that your child was initially taken into custody when you were arrested for possession of methamphetamine in February of 2021?

"A. Yes, sir.

. . . .

"Q. And so, isn't it true that you were basically out of custody, honestly, from November of '21 until basically May of this year?

"A. Yes, sir.

. . . .

"Q. Okay. Isn't it true that, basically, you did—from, for sure, November of '21 until you were taken into custody in May of this year, essentially, you didn't do any of your case plan goals; isn't that true?

"A. Yes, sir."

Mother conceded she was not incarcerated from November 2021 to May 2023—approximately 19 months—and during that time she did not complete her reintegration plan tasks. During that time, Mother got married. Mother testified she had arranged housing for her and I.W. with her new husband after her release from incarceration, but the timing was unclear because her new husband had not yet been approved to live with I.W. Mother confirmed in her testimony that she understood that even after her release, it

6

would be several months before I.W. could return to Mother's home even under the best circumstances.

Mother testified she had not completed her case plan tasks because she "was stuck in [her] addiction" and had difficulty maintaining sobriety while not incarcerated. She explained she "didn't want to get clean for a long time because [she] was hurting" and "lost sight of what [she] should have been doing . . . to get [I.W.] back." She explained that because she was currently in custody, she was sober and ready to maintain that sobriety.

The district court ultimately terminated Mother's parental rights to I.W., explaining from the bench that Mother's actions demonstrated she was presently unfit and her unfitness was not likely to change in the foreseeable future:

"I do think the State has made its argument with the presumption of unfitness under 38-2271[a](5) and (6)(A). (6)(A) is obviously more—(6)(A), (B) and (C) are more appropriate. That the child has been out of home for a cumulative period of two years or more, and the parent has failed to carry out a reasonable plan toward the reintegration of the child in the home, and there's a substantial probability that the parent will not carry out such plan in the near future.

"I understand she has a plan. She's testified to that. Whether or not she'll carry it out is a different question. Frankly, I think, to be honest, if she hadn't been arrested on her warrant, I doubt we'd be here. She doesn't seem to take any steps in the right direction unless she's in custody. So I don't think that there's any probability that she would carry out that plan.

"So the Court's going to find, under K.S.A. [38]-2269(b)(3), the use of intoxicating liquors or narcotic or dangerous drugs render the parent unable to care for the ongoing physical, mental and emotional needs of the child; (5) conviction of a felony and imprisonment; (8) lack of effort on the part of the parent to address the parent's circumstances, conduct or conditions to meet the needs of the child; and (9) that the

7

results or inactions of the parent of the factors listed in the above sections, that the child has been out of home for 15 of the most recent 22 months.

"I'd also find under subsection (c) that when the child is not in the physical custody of the parent, the parent, number (1), failed to assure care of the child in the parental home when able to do so. She testified for over a year she was out. She had a home. She had that ability. She chose not to see her child. She chose not to get treatment. She chose not to do any of the case plan tasks. Which takes me to (3) failure to carry out reasonable plan and, of course, (2) failure to communicate or visit with the child on a regular basis.

"So the Court does find that she's unfit. And then under (g)(1) of that same statute, if the Court finds that she's unfit, whether or not her rights should be severed is determined in the best interest of the child. In doing so, the Court must give primary consideration to the physical, mental and emotional health of the child. If the physical, mental, emotional needs of the child would best be served by termination of rights, the Court shall so order.

"I do find that it is in the child's best interest, both—or, physically, mentally and emotionally, to sever your rights as her parent. You haven't seen her since she was two years old. And by the time you get out of prison, she's going to be close to six.

"Frankly, not only do I think she probably doesn't remember your current husband, I doubt she'd remember you very much at this point, to be honest. I think the parental people in her life that she would recognize as her parents are her placement.

"And, frankly, that's just all the result of you choosing to go on the run and to do drugs. And I can appreciate that you have hindsight and want to get better. And I wish you nothing but success. It's going to be best for you and for any of the other children you may have in the future. But at this point, it's [I.W.]'s best interest to have your rights terminated. So the Court will sever her parental rights."

In its subsequent journal entry of finding of unfitness and order terminating parental rights, the district court explained:  "The Court finds the State has met the burden of K.S.A. 38-2271(a)(5)[,] [a](6)(A)(B) and (C) and mother has not rebutted the presumption. The Court further finds the mother unfit and her parental rights are terminated, based upon K.S.A. 38-2269(b)(3)[,] (5)[,] (8)[,] (9), (c)(1)[,](3) and (g)(1)." The order further stated:

8

"Considering the physical, mental or emotional health of the child, termination of parental rights is in the best interests of the child named above and the physical, mental or emotional needs of the child would best be served by termination of parental rights. The parental rights of [Mother] and [Father] should be terminated."

Mother timely appealed.

DISCUSSION

On appeal, Mother's only argument is that the State failed to meet the burden of proof for the presumption that she was presently unfit and that the district court erred in finding Mother unfit and that her conditions of unfitness were unlikely to change in the foreseeable future. Therefore, any other issues Mother raised below that were not briefed are abandoned. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned."). Although Mother frames her appeal as two distinct claims, she essentially argues the district court erred in terminating her parental rights to I.W. The State did not file an appellate brief; however, I.W.'s guardian ad litem filed a brief urging affirmance.

Mother has a fundamental liberty interest to make decisions regarding the care and custody of I.W., and those rights cannot be terminated without due process. *In re P.R.*, 312 Kan. 767, Syl. ¶ 3, 480 P.3d 778 (2021); see *In re A.A.-F.*, 310 Kan. 125, Syl. ¶¶ 15-16, 444 P.3d 938 (2019). "The fundamental right to parent is not however without limits. The welfare of children is a matter of state concern." *In re P.R.*, 312 Kan. 767, Syl. ¶ 4. Therefore, the State may develop processes designed to protect the welfare of children. *In re A.A.-F.*, 310 Kan. 125, Syl. ¶ 16.

The Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., is "a legislatively designated framework of sequential steps of judicial proceedings with each step occurring in a specific order leading toward permanency in the child's placement.'" *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 5, 329 P.3d 458 (2014). This process includes five

phases, and this case is in the fourth phase—the termination phase—where a party alleges that reintegration with a parent is not a feasible option, and the parent's rights should be terminated. See *In re N.E.*, 316 Kan. 391, 393-94, 516 P.3d 586 (2022). During this phase, the district court must determine whether there is "clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a); see *In re D.G.*, 319 Kan. 446, Syl. ¶ 1, 555 P.3d 719 (2024). If the answer is yes to both, the court must then determine whether termination of parental rights is in the child's best interests. K.S.A. 38-2269(g)(1).

K.S.A. 38-2269(b) enumerates nine nonexclusive factors the district court shall consider in "making a determination of unfitness":

"(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;

"(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

"(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

"(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;

"(5) conviction of a felony and imprisonment;

"(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

"(9) whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months

10

beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

When "a child is not in the physical custody of a parent," as is the case here, the district court shall consider four additional, nonexclusive factors in making its determination of unfitness:

"(1) Failure to assure care of the child in the parental home when able to do so;
"(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;
"(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and
"(4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay.
"In making the above determination, the court may disregard incidental visitations, contacts, communications or contributions." K.S.A. 38-2269(c).

Any single factor enumerated in K.S.A. 38-2269(b) or (c) can establish grounds for terminating parental rights. K.S.A. 38-2269(f).

Additionally, a parent is presumed unfit—which can be rebutted—when the child has been in court-ordered, out-of-home placement for one year or longer and "the parent has substantially neglected or willfully refused to carry out a reasonable" reintegration plan. K.S.A. 38-2271(a)(5). The same presumption of unfitness is established when the child has been in court-ordered, out-of-home placement for two years or longer and the parent failed to carry out a reasonable court-ordered reintegration plan and "there is a substantial probability that the parent will not carry out such plan in the near future." K.S.A. 38-2271(a)(6). If the presumption is established under either provision, the burden then shifts to the parent to "rebut the presumption of unfitness by a preponderance of the evidence."

11

K.S.A. 38-2271(b). If the parent fails to rebut the presumption, the court "shall terminate parental rights." K.S.A. 38-2271(b).

This court reviews Mother's claim to determine whether the evidence, when viewed in the most favorable light to the State, would convince a rational fact-finder that Mother was unfit and that her unfitness was likely to continue for the foreseeable future. *In re D.G.*, 319 Kan. 446, Syl. ¶ 2. This includes an evaluation of any evidence from Mother that she is not unfit. "In making this decision, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 319 Kan. 446, Syl. ¶ 2.

I.     THE DISTRICT COURT CORRECTLY CONCLUDED MOTHER IS PRESUMED UNFIT PURSUANT TO K.S.A. 38-2271(A)(5) AND (A)(6)

Mother first contends "[t]he State failed to meet the burden of proof for the presumption of unfitness" because she was incarcerated in a county jail without the opportunity to complete the case plan tasks. According to Mother's argument, once she transferred to the KDOC, "she took substantial steps to complete the case plan tasks established for her to reintegrate her minor child."

The district court correctly concluded the presumptions of unfitness established in K.S.A. 38-2271(a)(5) and (a)(6) apply in this case. The State presented clear and convincing evidence that (1) I.W. was in court-ordered, out-of-home placement for well over two years beginning in February 2021 and until the hearing regarding termination of Mother's parental rights in October 2023; (2) Mother substantially neglected or willfully refused—and ultimately failed—to carry out the reasonable court-approved reintegration plan; and (3) there was evidence demonstrating a substantial probability that Mother would not carry out the plan in the near future. Moreover, Mother did not carry her burden to rebut this presumption by a preponderance of the evidence—i.e., she did not

prove it was more probably true than not true that she was presently fit and able to care for I.W. or that she would be fit and able to care for I.W. in the foreseeable future. See *In re Estate of Moore*, 310 Kan. 557, 565, 448 P.3d 425 (2019) (defining the standard of proof required by a preponderance of the evidence).

After I.W. was removed from Mother's home, Mother continued to engage in the conduct that caused I.W. to be placed out of the home. That same conduct resulted in her being incarcerated. Mother's arguments that her incarceration hindered her ability to pursue the reintegration plan are wholly unavailing because Mother was not incarcerated for over 18 months and yet made no progress on the reintegration plan during that time. However, during that time Mother *did* get remarried, which—as the district court pointed out—showed that Mother "has the ability to make some life decisions and life choices." Unfortunately, she did not choose to focus on the reintegration plan during that time. This observation is not a judgment of Mother's character or choices but a demonstration that Mother had the ability to engage in activities that required time and commitment during the same time she failed to make progress on the reintegration plan. In fact, Mother had not visited I.W. for more than a year before the termination hearing.

At the time of the termination hearing, I.W. was four years old and had not been in Mother's custody for over half her life and had not seen Mother in over a year. Mother does not allege she completed any tasks on the reintegration plan. Therefore, a rational fact-finder could have found it highly probable—indeed, could have found it almost certain—that Mother did not and would not carry out the reintegration plan in the near future. The district court therefore did not err in concluding Mother was presumed unfit to parent I.W. under K.S.A. 38-2271(a)(5) and (a)(6).

II.	THE DISTRICT COURT DID NOT ERR IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT MOTHER WAS UNFIT BY REASON OF CONDUCT OR CONDITION WHICH RENDERED HER UNABLE TO CARE PROPERLY FOR I.W. AND THE CONDUCT OR CONDITION WAS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE

The district court relied upon the following statutory factors in finding Mother presently unfit: K.S.A. 38-2269(b)(3), (b)(5), (b)(8), (b)(9), (c)(1), and (c)(3). Clear and convincing evidence supports the district court's determination that all of these factors weigh in favor of finding Mother unfit.

A. *K.S.A. 38-2269(b)(3)—the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child*

On the day I.W. was placed in protective custody, Mother's home was unsanitary, without proper food for I.W., and contained illegal drugs and paraphernalia. Mother continued to use illegal drugs in such a manner that resulted in two more arrests for possession of methamphetamine prior to the termination hearing. In fact, she was in custody for one of those arrests at the time of the hearing. Mother also testified to her addiction and how it made her unable to accomplish the reintegration plan tasks. The district court had clear and convincing evidence for its finding of unfitness related to Mother's continued use of dangerous drugs under K.S.A. 38-2269(b)(3).

B. *K.S.A. 38-2269(b)(5)—conviction of a felony and imprisonment*

Mother was convicted of a felony and serving a prison sentence at the time of the termination hearing, and this caused her to be unable to properly care for I.W. Moreover, Mother's prior incarceration also negatively impacted her ability to complete the reintegration plan tasks.

14

*C. K.S.A. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child*

As explained above, there was clear and convincing evidence that Mother failed to adjust her circumstances, conduct, or conditions to meet I.W.'s needs. Mother repeatedly engaged in the actions that resulted in I.W. being placed in emergency custody of the State and made no measurable progress on any task in her reintegration plan. Even when Mother was not incarcerated, she failed to regularly visit I.W. or complete other plan tasks. Mother's case manager testified at the termination hearing that while Mother attended about 15 visits with I.W., she failed to attend at least as many visits. Moreover, at the time of the termination hearing, it had been over a year since Mother visited I.W. despite the fact that she was not incarcerated during much of that time.

*D. K.S.A. 38-2269(b)(9)—whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home*

I.W. had been in DCF custody for well over the necessary time period required under this factor as a result of Mother's actions. Moreover, as explained elsewhere in this opinion, two of the factors listed in subsection (c) apply.

*E. K.S.A. 38-2269(c)(1)—failure to assure care of the child in the parental home when able to do so*

The state of Mother's home on the day I.W. was placed in protective custody— severely dirty and unsanitary, containing illegal drugs, and without infant food—

15

constitutes clear and convincing evidence upon which a rational fact-finder could rely in finding it highly probable that Mother failed to assure care of I.W. in her home.

F. *K.S.A. 38-2269(c)(3)—failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home*

As explained in this opinion, there was clear and convincing evidence that Mother failed to carry out the reasonable, court-approved reintegration plan.

III. CLEAR AND CONVINCING EVIDENCE DEMONSTRATED MOTHER'S UNFITNESS WAS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE

Finally, clear and convincing evidence supported the district court's determination that Mother's unfitness was unlikely to change in the foreseeable future. As explained herein, Mother failed to make any meaningful progress on her reintegration plan in more than 2 years, even when she was not incarcerated for about 18 months. Mother failed to visit I.W. for well over a year at the time of the hearing. Moreover, at the time of the termination hearing, I.W. was four years old—with over half her life spent outside of Mother's custody—and there was little evidence that Mother's conduct that resulted in I.W. being removed from her custody would change in the foreseeable future. The foreseeable future is relative. When, as here, the child is young and has little to no relationship with the parent due to the parent's conduct, the foreseeable future is shorter than it might be in other cases.

Courts use "child time" when assessing foreseeability. *In re E.L.*, 61 Kan. App. 2d 311, 328, 502 P.3d 1049 (2021). "The foreseeable future is examined from the child's perspective because children have a different perception of time than adults and have a right to permanency within a time frame reasonable to them." *In re E.L.*, 61 Kan. App. 2d at 328; see K.S.A. 38-2201(b)(4) (acknowledging that "the time perception of a child

16

differs from that of an adult"). At the termination hearing, Mother was incarcerated and testified that she had a plan to accomplish the reintegration plan tasks during her incarceration. However, Mother had not yet completed the tasks, including obtaining authorization for I.W. to live with her new husband. Mother knew that because of her lack of progress, it would be several months after her release before I.W. could live with her even if Mother completed her reintegration plan tasks.

Mother's mere assurance of her intentions was unsupported by other evidence, including her past conduct. As the district court noted, Mother had only made progress while incarcerated because she was unable to abuse illegal drugs. The court explained that Mother "doesn't seem to take any steps in the right direction unless she's in custody. So I don't think that there's any probability that she would carry out that plan." I.W. has now spent well over half her life in someone else's care, and Mother's incarceration and lack of progress on the reintegration plan would likely increase that time by more than an additional year.

Viewing all the evidence, a rational fact-finder could have found it highly probable that Mother's unfitness was unlikely to change in the foreseeable future—particularly when considering foreseeability from I.W.'s perspective. I.W. has spent more than half her life in the custody of someone other than Mother, and in that time, Mother not only failed to accomplish reasonable reintegration plan tasks but also failed to regularly visit I.W. When not incarcerated, Mother was not committed to accomplishing the reintegration plan. This evidence demonstrates that Mother's unfitness is unlikely to change in the foreseeable future.

Mother does not challenge the district court's determination that termination of her parental rights was in the best interests of I.W., and that issue is therefore waived or abandoned. See *Meggerson*, 312 Kan. at 246 ("Issues not briefed or not adequately briefed are deemed waived or abandoned.").

17

CONCLUSION

Mother failed to make any meaningful progress on the reasonable reintegration plan after I.W. was removed from her custody. Mother's failure to overcome her addiction and maintain regular visits with I.W. resulted in I.W. spending more than half her life in out-of-home placement without meaningful steps toward Mother regaining custody. At the time of the termination hearing, Mother had not visited I.W. in over a year and was currently incarcerated with several months remaining on her sentence. Unfortunately, prior to her most recent incarceration, Mother had not shown progress toward reintegration with I.W. and, by the time of the hearing, there was no evidence supporting a finding that Mother's unfitness was likely to change in the foreseeable future. I.W. deserves some certainty as to her future custody. The district court did not err in terminating Mother's parental rights.

Affirmed.